IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL BUSKEN,<br>    Plaintiff, | §<br>§<br>§ | |
| vs. | § | CIVIL ACTION NO. 3:19cv2808 |
| | § | |
| CITY OF GREENVILLE, TEXAS,<br>    Defendant. | §<br>§<br>§ | |

## COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Daniel Busken, Plaintiff, and files this amended complaint against the City of Greenville, Texas (hereinafter "Defendant" and "City"), and would respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff is an individual residing in Hunt County, Texas.

2. Defendant City of Greenville, Texas is a governmental entity doing business in Texas and may be served by serving David Dreiling, Mayor, 2821 Washington Street, Greenville, Texas 75401.

### II. JURISDICTION

3. Jurisdiction is founded on federal question, specifically 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended; 42 U.S.C. §12101, *et seq.* (The Americans with Disabilities Act of 1990, "ADA"), as amended; 29 U.S.C. § 2601, *et seq.* (The Family and Medical Leave Act, "FMLA"), as amended; 42 U.S.C. § 1983, *et seq.,* as amended.

4. All prerequisites to filing suit have been met.

## III. FACTS

5.     Plaintiff was employed by the City of Greenville, Texas for over eight (8) years in its Police Department. From on or about September 27, 2010 to his discharge on or about February 11, 2019, he was employed as the Chief of Police. At the time of his discharge, Plaintiff was 57 years of age.

6.     Upon information and belief, Defendant had twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, the requisite number of employees to constitute an "employer" under the ADEA.

7.     Upon information and belief, Defendant had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, the requisite number of employees to constitute an "employer" under the ADA.

8.     Upon information and belief, Defendant had fifty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, the requisite number of employees to constitute an "employer" under the FMLA.

9.     In March 2016, Plaintiff underwent an L-3 to S-1 fusion and decompression. In 2017, he began experiencing worsening pain and numbness in his left leg. His pain doctor referred him to a back surgeon.

10.    In May 2018, Dr. Jeremy Denning determined Plaintiff needed additional back surgery.

11.    Plaintiff immediately informed Summer Spurlock, then Acting City Manager (approximately 35-39 years old), and Jaynice Porter-Brathwaite, Human Resources Director (approximately 50 years old).

12.    In June 2018, the surgery was scheduled for July 9, 2018 and Plaintiff's surgeon advised Plaintiff would need to remain off work for at least seven (7) weeks post-surgery. Plaintiff informed the HR department of this when he requested the FMLA form. Plaintiff returned the FMLA form on

June 14, 2018 and his FMLA leave was approved on June 15, 2018 to begin on July 9, 2018, the date of surgery, and end on or about September 28, 2018.

13. On June 15, 2018, Plaintiff was called into a meeting with Ms. Porter-Brathwaite and Ms. Spurlock. Ms. Spurlock told him the City was drafting a Separation Agreement to terminate him upon his return from FMLA leave. Plaintiff was informed that he would have 21 days to accept the Agreement and he was being placed on Administrative Leave with pay until his FMLA leave began. Plaintiff was told if he did not accept the Agreement, he would be discharged when his FMLA expired.

14. No reason was given for placing Plaintiff on Administrative Leave. Pursuant to the City's written policy manual, Administrative Leave (with or without pay) is used pending an investigation or review of an infraction. It is not considered a disciplinary action and thus is not appealable.

15. Ms. Porter-Brathwaite later told Plaintiff his removal as chief of police was not related to rules violations or performance issues.

16. On July 9, 2018, Plaintiff underwent lumbar spinal fusion with bone growth stimulator. His surgeon, Dr. Jeremy Denning, initially took him off work for seven weeks. Following his second post-op examination on September 6, 2018, Dr. Denning determined Plaintiff needed an additional seven weeks off work.

17. In correspondence dated September 13, 2018, Plaintiff requested reasonable accommodation to extend his FMLA leave, which was due to expire on September 28, 2018, to his next doctor appointment and evaluation.

18. In correspondence dated September 16, 2018, Ms. Porter-Brathwaite informed Plaintiff his medical leave was extended through October 26, 2018.

19.     On October 25, 2018, Dr. Denning released Plaintiff to return to work with restrictions including no lifting over 20 pounds, limited bending and twisting at the waist as determined by lumbar brace mobility, must have the ability to stand and walk around every hour, and must refrain from wearing the full duty belt.

20.     Plaintiff requested a modified duty assignment within the parameters of those restrictions.

21.     On November 5, 2018, Ms. Porter-Brathwaite informed Plaintiff the City did not have modified duty assignments within the Greenville Police Department.  Instead, his medical leave was extended through December 27, 2018.

22.     In correspondence dated November 17, 2018, Plaintiff renewed his request for a modified duty assignment and pointed out to Ms. Porter-Brathwaite that the City's Personnel Manual specifically states it is the goal of the City to locate and assign restricted work assignments when necessary and feasible to employees who are temporarily restricted from performing the essential functions of his/her job as a result of a work related or non-work related injury or illness.

23.     Indeed, the restrictions outlined by Dr. Denning would have had little or no effect on Plaintiff's ability to perform his duties as chief of police, which were largely administrative and supervisory.

24.     Ms. Porter-Brathwaite again denied Plaintiff a modified duty assignment on November 27, 2018.  She stated that a Modified Duty Assignment is not a guaranteed benefit and the determination whether to grant it to Plaintiff is at the discretion of the City Manager (Ms. Spurlock).

25.     In 2012, Plaintiff had a knee scoped and returned to work after a short leave wearing a large knee brace and using crutches.  These were not considered deterrents to him performing his duties.

26.     In 2015, Plaintiff had a partial shoulder replacement and again returned to work after a short leave with his arm in a sling for several weeks.  He was allowed to perform his duties.

27.     In March 2016, Plaintiff had back surgery for the first time. His doctor completed the FMLA paperwork and he turned it into Human Resources. Plaintiff returned to work after a few weeks of recovery with restrictions from his doctor including no bending, lifting, or twisting. Over time, the doctor reduced and eventually lifted the restrictions altogether. No one questioned Plaintiff's ability to do his job as chief of police with those restrictions.

28.     Other Greenville Police Department officers received modified duty assignments.

29.     In summer 2018, Bobby Wooldridge, patrol officer (approximately 40 years old), was assigned to dispatch while recovering from a knee or ankle injury. He has received previous modified duty assignments.

30.     Also, in summer 2018, Stephen Carper, patrol officer (approximately 30-35 years old), was given a modified duty assignment. He has had other injuries during his time with the department and received previous modified duty assignments.

31.     On December 27, 2018, Dr. Denning again released Plaintiff to return to work with lightened restrictions including no lifting over 50 pounds and avoiding repetitive bending and twisting. The restrictions were to continue until his next follow up visit scheduled for January 31, 2019.

32.     On January 7, 2019, in response to Dr. Denning's note, the City through Ms. Porter-Brathwaite requested Dr. Denning provide additional information by completing its "Fitness for Duty" form.

33.     On January 11, 2019, the completed "Fitness for Duty" form was returned to the City. Dr. Denning reiterated the restrictions contained in his December 27, 2018 release.

34.     In correspondence from Ms. Porter-Brathwaite dated January 15, 2019, the City again denied Plaintiff modified duty.

35. On January 31, 2019, Plaintiff received a full release to return to work with no restrictions from Dr. Denning and forwarded it to Ms. Porter-Brathwaite with a request to return to work on Monday, February 4, 2019.

36. On February 4, 2019, Plaintiff received correspondence from Ms. Porter-Brathwaite advising him of a meeting with the City Manager (Spurlock) scheduled for February 11, 2019. The same day Plaintiff received a voice mail from Penny Perryman in the human resources department to call her in reference to his return to work date.

37. In the meeting on February 11, 2019 with Ms. Porter-Brathwaite and Ms. Spurlock, Ms. Spurlock informed Plaintiff he was being discharged from his position as Chief of Police for Greenville Police Department. She further told him she had a resignation letter and a termination letter prepared. Either way, she needed a decision from him right away.

38. Plaintiff refused to sign the resignation letter. Ms. Spurlock's termination letter stated the decision was final and would not be modified. She gave no reason in the letter for his termination.

39. At the time of his discharge, Plaintiff was earning approximately $61.1440 per hour plus benefits and longevity pay. In 2018, he earned $112,558.92.

40. Plaintiff contends that Defendant violated 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended; 42 U.S.C. §12101, *et seq.* (The Americans with Disabilities Act of 1990, "ADA"), as amended; 29 U.S.C. § 2601, *et seq. (*The Family and Medical Leave Act, "FMLA"), as amended; 42 U.S.C. § 1983, *et seq.,* as amended; and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

## IV. FEDERAL CLAIMS FOR RELIEF AND DAMAGES

## COUNT I

### Violations of 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended

41. Plaintiff incorporates the factual allegations contained in paragraphs 5-40 herein as if set out verbatim.

42. Plaintiff was discharged in violation of 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended, protecting Plaintiff from discrimination on the basis of age.

43. Plaintiff was 57 years of age at the time of his removal as Chief of Police for the City of Greenville.

44. Plaintiff was well qualified for the position of Chief of Police for the City of Greenville based upon his education, training, and thirty-four (34) years of experience as a law enforcement officer.

45. Defendant's eventual stated reason for discharging Plaintiff as Chief of Police for the City of Greenville is purely pretextual, as Plaintiff had never received a negative performance review and was never given notice of deficiencies of any kind.

46. Plaintiff claims all relief, legal and equitable that effectuate his rights under 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended.

47. Plaintiff requests reasonable attorney's fees as permitted under 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended.

48. On or about March 25, 2019, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On October 7, 2019, Plaintiff received the Notice of Right to Sue from the U.S. Department of Justice Civil Rights Division, which was dated October 1, 2019.

49. In addition to Count I, or in the alternative, Plaintiff alleges as follows:

## COUNT II

## Violations of 42 U.S.C. §12101, *et seq*. (The Americans with Disabilities Act of 1990, "ADA"), as amended

50. Plaintiff incorporates the factual allegations contained in paragraphs 5-40 herein as if set out verbatim.

51. Plaintiff alleges that he was discharged in violation of 42 U.S.C. §12101, *et seq*. (The Americans with Disabilities Act of 1990, "ADA"), as amended, protecting Plaintiff from discrimination in the workplace on the basis of his disability or perceived disability.

52. Plaintiff alleges he was denied reasonable accommodation in violation of 42 U.S.C. §12101, *et seq*. (The Americans with Disabilities Act of 1990, "ADA"), as amended, protecting Plaintiff from discrimination in the workplace on the basis of his disability or perceived disability.

53. Plaintiff further alleges Defendant failed to engage in any interactive process to determine appropriate accommodation for Plaintiff, if any, so that Plaintiff could continue to work.

54. Plaintiff claims all relief, legal and equitable, that effectuate his rights under 42 U.S.C. §12101, *et seq*. (The Americans with Disabilities Act of 1990, "ADA"), as amended.

55. Plaintiff requests reasonable attorney's fees as permitted under 42 U.S.C. §12101, *et seq*. (The Americans with Disabilities Act of 1990, "ADA"), as amended.

56.     On or about March 25, 2019, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On October 7, Plaintiff received the Notice of Right to Sue from the U.S. Department of Justice Civil Rights Division, which was dated October 1, 2019.

57.     In addition to Count I and II, or in the alternative, Plaintiff alleges as follows:

## COUNT III

## Violations of 29 U.S.C. § 2601, *et seq.* (The Family and Medical Leave Act, "FMLA"), as amended

58.     Plaintiff incorporates the factual allegations contained in paragraphs 5-40 herein as if set out verbatim.

59.     Plaintiff would show Defendant's conduct as set forth above constitutes a violation of 29 U.S.C. § 2601, *et seq. (*The Family and Medical Leave Act, "FMLA"), as amended.

60.     Plaintiff would show that Defendant failed to restore Plaintiff to his position of Chief of Police or a similar position after presenting to work with a physician's unrestricted release to return to work.

61.     Plaintiff would show Defendant retaliated against Plaintiff for seeking and utilizing FMLA leave by discharging Plaintiff without legitimate cause when he presented back to work with his physician's unrestricted release to return to work.

62.     Plaintiff claims all relief, legal and equitable that effectuate his rights under 29 U.S.C. § 2601, *et seq.*, (The Family Medical and Leave Act, "FMLA"), as amended.

63.     Plaintiff requests reasonable attorney's fees as permitted under 29 U.S.C. § 2601, *et seq.*, (The Family Medical and Leave Act, "FMLA"), as amended.

64.     In addition to Count I, II, and III, or in the alternative, Plaintiff alleges as follows:

## COUNT IV

### Violations of 42 U.S.C. § 1983, *et seq.*, as amended

65. Plaintiff incorporates the factual allegations contained in paragraphs 5-40 herein as if set out verbatim.

66. Plaintiff was removed as Chief of Police for the City of Greenville, Texas.

67. Plaintiff was never served with any complaint regarding any alleged "deficiencies in leadership."

68. Defendant violated 42 U.S.C §1983, *et seq.*, as amended, by depriving Plaintiff of a property interest created by State law.

69. Plaintiff claims all relief, legal and equitable that effectuate his rights under 42 U.S.C. §1983, *et seq.*, as amended.

70. Plaintiff requests reasonable attorney's fees as permitted under 42 U.S.C. §1988, *et seq.*, as amended.

## V. DAMAGES

71. Plaintiff would show that he has sustained damages within the jurisdictional limits of the Court as a proximate cause of Defendant's wrongful conduct. Plaintiff claims all relief at law and in equity pursuant to 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended; 42 U.S.C. §12101, *et seq.* (The Americans with Disabilities Act of 1990, "ADA"), as amended; 29 U.S.C. § 2601, *et seq.* (The Family and Medical Leave Act, "FMLA"), as amended; and 42 U.S.C. § 1983, *et seq.,* as amended.

## VI. ATTORNEY'S FEES

72. Plaintiff would show that, as a result of Defendant's wrongful conduct as set forth herein, he is entitled to reasonable and necessary attorneys' fees.

## IX. JURY DEMAND

73. Plaintiff requests that this matter be tried before a jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that upon final hearing hereof, Plaintiff have judgment against Defendant for actual damages in an amount within the jurisdictional limits of the Court together with interest on said amount at the highest rate allowed by law; reinstatement; liquidated damages; mental anguish; reasonable attorneys' fees; costs of court; prejudgment and postjudgment interest; and any and all further relief, at law or in equity, general or special, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**RONALD R. HUFF**
Attorney and Counselor at Law
112 South Crockett Street
Sherman, Texas 75090
(903) 893-1616 (telephone)
(903) 813-3265 (facsimile)
ronhuff@gcecisp.com

 /s/ Ronald R. Huff
Ronald R. Huff (SBN 10185050)

RICHARDSON LAW FIRM
118 S. Crockett
Sherman, Texas 75090
Tel: (903) 893-7541
Fax: (903) 893-9585

By: /s/Robert E. Richardson, Jr.
   Robert E. Richardson Jr.
   SBN: 16873000
   robert@richardsonfirm.net

   /s/ Robert E. L. (Ed) Richardson
   Robert E. L. (Ed) Richardson
   SBN: 24007913
   ed@richardsonfirm.net
**ATTORNEYS FOR PLAINTIFF**