UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Daniel Busken, | |
| Plaintiff; | |
| v. | Case No. 3:19-cv-2808 |
| City of Greenville, Texas, | |
| Defendant. | |

---

## DEFENDANT CITY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of Contents...........................................................................................................i

Table of Authorities....................................................................................................iii

Summary........................................................................................................................1

Statement of Undisputed Material Facts..................................................................2

Argument and Authorities..........................................................................................9

1.    Standard of review.............................................................................................9

2.    This Court must dismiss Plaintiff's age discrimination claim under the ADEA because Plaintiff cannot establish a prima facie case and the City had a legitimate, nondiscriminatory reason for his termination. ............................................ 9

    a.    Plaintiff cannot establish a prima facie case of age discrimination because he was replaced by someone older than him..............................................10

    b.    City Manager Spurlock had a legitimate nondiscriminatory reason to discharge Plaintiff as chief of police..............................................................12

3.    This Court must dismiss Plaintiff's ADA claim for wrongful termination because Plaintiff cannot establish a prima facie case and the City had a legitimate, non-discriminatory reason for his termination. ....................................................15

    a.    Plaintiff cannot establish a prima facie case of ADA discrimination because he was not disabled at the time of his termination and he cannot show his termination was on account of a disability.....................................................16

    b.    Defendant City had a legitimate non-discriminatory reason to discharge Plaintiff as chief of police..............................................................................20

4.    This Court must dismiss Plaintiff's ADA failure-to-accommodate claim because Plaintiff cannot establish a prima facie case and the City did provide him with a reasonable accommodation. ............................................................................. 20

5.    This Court must dismiss Plaintiff's FMLA retaliation and entitlement claims. .................23

    a.    Plaintiff's FMLA retaliation claim must be dismissed the City had a legitimate, non-discriminatory reason for his termination..................................................24

    b.    Plaintiff's FMLA entitlement claim must be dismissed because the City had decided to terminate him prior to his taking FMLA leave...............................24

6.    Plaintiff does not have a property interest in his former position as chief of police. ......... 26

Conclusion ................................................................................................................................. 28

Certificate of Service ................................................................................................................. 29

## TABLE OF AUTHORITIES

**Cases**

*Ahrens v. Perot Sys. Corp.,*
   205 F.3d 831 (5th Cir. 2000) .................................................................................... 19

*Allen v. Rapides Par. Sch. Bd.,*
   204 F.3d 619 (5th Cir. 2000) .................................................................................... 21

*Amedee v. Shell Chem., L.P.,*
   953 F.3d 831 (5th Cir. 2020) .............................................................................. 24, 25

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ..................................................................................................... 9

*Barber v. Nabors Drilling, U.S.A., Inc.,*
   130 F.3d 702 (5th Cir.1997) ...................................................................................... 21

*Benjamin v. City of Watauga, Texas,*
   841 F. Supp. 2d 1010 (N.D. Tex. 2012) .................................................................. 27

*Berquist v. Wash. Mut. Bank,*
   500 F.3d 344 (5th Cir. 2007) ................................................................................ 11, 12

*Board of Regents v. Roth,*
   408 U.S. 564 (1972) ................................................................................................... 27

*Brookins v. Indianapolis Power & Light Co.,*
   90 F. Supp. 2d 993 (S.D. Ind. 2000) ....................................................................... 22

*Brown v. E. Miss. Elec. Power Ass'n,*
   989 F.2d 858 (5th Cir. 1993) .................................................................................... 16

*Cabrol v. Town of Youngsville,*
   106 F.3d 101 (5th Cir. 1997) ..................................................................................... 27

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ..................................................................................................... 9

*Clark v. Champion Nat'l Sec., Inc.,*
   952 F.3d 570 (5th Cir. 2020) ................................................................................ 15, 16

*Colorado Cty. v. Staff,*
   510 S.W.3d 435 (Tex. 2017) ..................................................................................... 28

*Delaval v. PTech Drilling Tubulars, L.L.C.,*
   824 F.3d 476 (5th Cir. 2016) .................................................................................... 20

*Dewitt v. Sw. Bell Tel. Co.*,
   845 F.3d 1299 (10th Cir. 2017) ................................................................22

*E.E.O.C. v. Chevron Phillips Chem. Co., LP*,
   570 F.3d 606 (5th Cir. 2009) ...................................................................21

*E.E.O.C. v. LHC Grp., Inc.*,
   773 F.3d 688 (5th Cir. 2014) ....................................................13, 16, 19

*Eubank v. Lockhart Indep. Sch. Dist.*,
   229 F. Supp. 3d 552 (W.D. Tex. 2017),
   *aff'd*, 734 Fed. Appx. 295 (5th Cir. 2018) ............................................21

*Feist v. La., Dep't of Justice, Office of the Attorney Gen.*,
   730 F.3d 450 (5th Cir. 2013) ...................................................................20

*Goudeau v. Nat'l Oilwell Varco, L.P.*,
   793 F.3d 470 (5th Cir. 2015) .............................................................10, 11

*Green v. Medco Health Sols. of Tex., LLC*,
   947 F. Supp. 2d 712 (N.D. Tex. 2013),
   *aff'd sub nom.*, 560 Fed. Appx. 398 (5th Cir. 2014) ...........................22

*Griffin v. United Parcel Serv., Inc.*,
   661 F.3d 216 (5th Cir. 2011) ...................................................................23

*Gross v. FBL Financial Services, Inc.*,
   557 U.S. 167 (2009) ...................................................................................10

*Grubb v. Southwest Airlines*,
   296 Fed. Appx. 383 (5th Cir.2008) .......................................................25

*Herster v. Bd. of Supervisors of La. State Univ.*,
   887 F.3d 177 (5th Cir. 2018) ...................................................................16

*Iqbal v. City of Pasadena*,
   2020 WL 411107 (S.D. Tex. 2020) .........................................................22

*Jones v. Robinson Prop. Grp., L.P.*,
   427 F.3d 987 (5th Cir. 2005) ...................................................................16

*Kim v. Hospira, Inc.*,
   709 Fed. Appx. 287 (5th Cir. 2018),
   *cert. denied*, 138 S. Ct. 2628, 201 L. Ed. 2d 1029 (2018) .................12

*Lee v. Kan. City S. Ry. Co.*,
   574 F.3d 253 (5th Cir. 2009) ...................................................................12

*Loulseged v. Akzo Nobel Inc.*,
   178 F.3d 731 (5th Cir. 1999) ..................................................................21

*Machinchick v. PB Power, Inc.*,
   398 F.3d 345 (5th Cir. 2005) ..................................................................13

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ..................................................................................10

*Medrano v. City of San Antonio*,
   179 Fed. Appx. 897 (5th Cir.2006) .........................................................20

*Milton v. Tex. Dep't of Criminal Justice*,
   707 F.3d 570 (5th Cir. 2013) ..................................................................19

*Moreno v. Brownlee*,
   85 Fed. Appx. 23 (5th Cir.2004) .............................................................21

*Moss v. BMC Software, Inc.*,
   610 F.3d 917 (5th Cir. 2010) ..................................................................10

*Moss v. Harris Cty. Constable Precinct One*,
   851 F.3d 413 (5th Cir. 2017) ..................................................................16

*Moulton v. City of Beaumont*,
   991 F.2d 227 (5th Cir. 1993) ..................................................................27

*Picard v. St. Tammany Par. Hosp.*,
   423 Fed. Appx. 467 (5th Cir. 2011) ........................................................21

*Reeves v. Sanderson Plumbing Products, Inc.*,
   530 U.S. 133 (2000) ..................................................................................13

*Richardson v. Monitronics Intern., Inc.*,
   434 F.3d 327 (5th Cir. 2005) ..................................................................24

*Riel v. Elec. Data Sys. Corp.*,
   99 F.3d 678 (5th Cir.1996) ......................................................................20

*Salazar v. Lubbock Cty. Hosp. Dist.*,
   No. 20-10322, 2020 WL 7138646 (5th Cir. 2020) ................................10

*Schultea v. Wood*,
   27 F.3d 1112 (5th Cir. 1994) ..................................................................27

*Shirley v. Precision Castparts Corp.*,
   726 F.3d 675 (5th Cir. 2013) ..................................................................25

*Siefken v. Village of Arlington Heights,*
   65 F.3d 664 (7th Cir. 1995) ................................................................. 22

*Sims v. City of Madisonville, Tex.,*
   894 F.3d 632 (5th Cir. 2018) ................................................................. 28

*Soledad v. U.S. Dep't of Treasury,*
   304 F.3d 500 (5th Cir. 2002) ................................................................. 19

*St. Mary's Honor Ctr. v. Hicks,*
   509 U.S. 502 (1993) ............................................................................... 13

*Stem v. Gomez,*
   813 F.3d 205 (5th Cir. 2016) ................................................................. 28

*Tex. Dep't of Cmty. Affairs v. Burdine,*
   450 U.S. 248 (1981) ............................................................................... 11

*Turco v. Hoechst Celanese Corp.,*
   101 F.3d 1090 (5th Cir. 1996) ............................................................... 21

*West v. Nabors Drilling USA, Inc.,*
   330 F.3d 379 (5th Cir. 2003) ................................................................. 13

*Williams v. Texas Tech Univ. Health Sciences Ctr.,*
   6 F.3d 290 (5th Cir. 1993) ..................................................................... 27

*Windhauser v. Bd. Of Supervisors for La. State Univ. & Agr. & Mech. Coll.,*
   360 Fed. Appx. 562 (5th Cir.2010) ...................................................... 20

## Rules

FED. R. CIV. P. 56(a) ................................................................................... 7

## Codes

29 C.F.R. § 825.216(a) ............................................................................... 22

29 U.S.C. § 2614(a)(1) ............................................................................... 22

29 U.S.C. § 2614(a)(3) ............................................................................... 22

29 U.S.C. § 623(a)(1) ................................................................................. 8

42 U.S.C. § 12102(1) .................................................................................. 14

42 U.S.C. § 12112(a) .................................................................................. 13

42 U.S.C. § 12112(b)(5)(A) ....................................................................... 18

### SUMMARY

On June 15, 2018, Plaintiff was advised by the City Manager that she would be dismissing him from his position as Chief of Police, and  Plaintiff was provided with a proposed Separation Agreement soon thereafter  The undisputed evidence, discussed in detail below, establishes that City Manager Summer Spurlock had a multitude of legitimate, non-discriminatory reasons to terminate Plaintiff's employ, all of which caused her to have significant and serious concerns about Plaintiff's leadership skills and ability to lead the City's Police Department in the future. At the June 15ᵗʰ 2018 meeting where he was advised he would be relieved of his position, Plaintiff confirmed he had filed a request for FMLA leave.  In response, the City Manager afforded Plaintiff full use of his benefits and Plaintiff's FMLA leave was approved and he received same and extensions.  After Plaintiff was fully released by his treating physician with no restrictions, on January 31, 2019, he was then terminated from City employ on February 11, 2019. Thereafter Plaintiff filed suit claiming in "shotgun" fashion that his termination was based on, alternatively, age discrimination under the ADEA, "disability" discrimination under the ADA, and/or discrimination or retaliation for exercising his right to seek leave under the FMLA. Plaintiff also tossed in a theory that under Chapter 614 if the Texas Government Code he had a property interest in his job position, a theory which has been emphatically rejected by the Fifth Circuit.

In that context, the primary issues presented for this Court are thus as follows:

- Whether Plaintiff  fails to  establish a prima facie case of age discrimination under the ADEA, including because he was replaced by someone older than him;

- Whether City Manager Spurlock had a legitimate nondiscriminatory reason to discharge Plaintiff as Chief of Police;

- Whether Plaintiff fails to establish a prima facie case of disability discrimination under the ADA, including because he was not disabled at the time of his termination and cannot adduce any evidence that his termination was on account

of a disability; and alternatively whether the City Manager had a legitimate nondiscriminatory reason to discharge Plaintiff as Chief of Police;

- Whether Plaintiff fails to establish a prima facie case of failure to accommodate under the ADA and whether the City did provide Plaintiff with a reasonable accommodation;

- Whether this Court must dismiss Plaintiff's FMLA retaliation and entitlement claims, including because the City had a legitimate nondiscriminatory reason to discharge Plaintiff and because the decision and reasons for Plaintiff's termination occurred prior to Plaintiff taking FMLA leave; and

- Whether under current precedent Plaintiff as an "at-will" employee had or has a property interest in his former position as Chief of Police.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

In September 2010, Plaintiff became the Chief of Police for the City of Greenville, Texas.[1] Throughout his employment with the City, Plaintiff did not have an employment contract and was at all times an at-will employee.[2] Plaintiff was formally terminated as the Chief of Police for the City on February 11, 2019.[3]

In 2017, the Texas Municipal Police Association ("TMPA") conducted an anonymous management survey of all employees of the Greenville Police Department ("2017 Management Survey").[4] The 2017 Management Survey revealed a number of problems in the Greenville Police Department, including that employees of the PD were treated unfairly and inequitably, PD employee input was not supported, PD employees feared retaliation for expressing their opinions about issues of concern, PD employees expressed a lack of confidence in Plaintiff's ability to lead the department into the future, training was only to minimum standards, employees at all levels were not held accountable for their actions, employees faced inconsistent discipline, the police

---

[1]   Pl.'s Orig. Compl., ¶ 5.
[2]   Appx. 00006, Nos. 23-25.
[3]   Pl.'s Orig. Compl., ¶ 5.
[4]   Appx. 00011.

department lacked a defined direction and goals, the police department suffered from low morale that was not improving, and PD employees were unwilling to finish their careers at the Greenville Police Department if the department continued "as is."[5] Further, the 2017 Management Survey results indicated that Plaintiff was a bad manager, was not concerned about his employees, did not make staffing decision in the best interest of employees, did not regularly attend meetings and briefings with employees, did not support his PD employees, and expressed a lack of confidence in Plaintiff's ability to lead the department into the future.[6] Moreover, the 2017 Management Survey included the following specific comments:

- "Since I've started at this department to now, I feel it has went down hill (sic) tremendously!!!"

- "I also feel we do not have the support from our chief and administrators as a department to move forward and get better. IT STARTS WITH THE CHIEF!!"

- "Morale at the Greenville Police Department is the lowest I have ever seen it."

- "The overall quality of this department has suffered under the current leadership. The chief has made no effort to be a part of this department or community and has made this obvious by his lack of securing a permanent residence, his constant applying for other chief jobs in other cities and lack of interaction with department employees."

- "The morale of our police department is at an all time low. It began declining shortly after Chief Busken was hired, and has continued to degrade as time has passed while under his command. We have good, able bodied, Officers that [are] leaving our department primarily due to his poor leadership. The best supervisor I ever worked for left because of Chief Busken."

- "Chief Busken's leadership has turned our department into a place where I work with mostly unhappy employees."

- "Chief does not know how to effectively and fairly discipline to maintain good order and morale."

---

[5]   Appx. 00012 – Appx 00045.
[6]   Appx. 00022 – Appx. 00025, Appx. 00027 – Appx. 00028.

- "Chief Busken is disconnected from the majority of employees at the PD. He comes across as unapproachable and disinterested much of the time."

- "Morale is the worst I have ever seen and am thinking about working elsewhere if things don't change around here quickly."

- "This department began training officers at a high level and had a clear goal. Officers within the department were trained to be instructors and a plan was set in motion to train officers. Chief Busken was hired and this plan for training has [almost] been stifled to the point where we are just doing mandatory training. This department had two Sergeants positions open for almost two years and this shows another lack of leadership on the Chief's part."

- "[T]he morale is at an all-time low."

- "I feel the morale of this department is awful."

- "The current state of morale at the GPD is shameful due in large part to the leadership of Chief of Police Dan Busken."

- "Chief Busken has failed to engage the department he leads."

- "I do not believe Chief Busken is an especially immoral man or harbor any animocity (sic) toward him personally. I simply believe he has ineffectively led this department for six years now to its detriment. The department is at an all time shortage of officers, morale is as low as it has been since I've been employed with the GPD, and he has done nothing to rally the troops. Ineffectual leadership is destroying the GPD and the community we serve deserve better."

- "Chief Busken has become disconnected from the officers of this department. The current direction of this department is unsafe, detrimental to the morale of each person and leaving the citizens of Greenville [in] jeopardy."

- "I do believe that the Greenville Police Department has the potential to be one of the best departments in this area. However, it seems like Chief Busken and his administration focuses on bringing down employees and their morale rather than encouraging and praising them. As of right now this department has no direction or future."[7]

Plaintiff received a copy of the 2017 Management Survey from a representative of the TMPA in December 2017.[8] After receiving the 2017 Management Survey, Plaintiff met with a representative

---

[7]   Appx. 00046 – Appx. 00053.
[8]   Appx. 00160, 107:14 – 20.

of the TMPA, Clint McNear.[9] During that meeting, Mr. McNear discussed the results of the survey with Plaintiff and stated that there needed to be some changes or "there may be a need for a new mommy or daddy at the Greenville Police Department."[10]

Later, during the spring of 2018, Plaintiff learned from then-City Manager Massoud Ebrahim that then-County Attorney Joel Littlefield had concerns about the performance of the Police Department. Plaintiff had a meeting with then-County Attorney Littlefield in which concerns were expressed about the performance of the Police Department.[11] Plaintiff believes that these concerns were politically motivated with the intent of having Plaintiff removed as Chief of Police.[12]

In March 2018, Summer Spurlock ("City Manager Spurlock") was appointed to serve as the City's Interim City Manager following the retirement of her predecessor, Massoud Ebrahim.[13] When the Interim City Manager position became available, Plaintiff also applied for the opening but did not get the position.[14]

In April 2018, while serving in the interim role, City Manager Spurlock received a request for a meeting with District Attorney Noble D. Walker and then-County Attorney Joel Littlefield. In addition, Mayor David Dreiling, Mayor Pro Tem Jerry Ransom, and City Attorney Daniel Ray also joined the meeting.[15] During that meeting, District Attorney Walker and County Attorney Littlefield expressed concerns about the poor performance of the Greenville Police Department

---

9    Appx. 00160 – Appx. 00161, 107:14 – 108:8.
10   Appx. 00161 – Appx. 163, 108:11 – 110:4.
11   Appx. 00122 – Appx. 00128, 69:8 – 75:13.
12   *Id.*
13   Appx. 00297, 40:12 – 23.
14   Appx. 00114, 61:15 – 25.
15   Appx. 00296 – Appx. 00297, 39:23 – 40:15; Appx. 00299 – Appx. 00301, 42:10 – 44:20; Appx. 00383, 126:14 – 17.

under the Plaintiff's management and leadership.[16] These concerns from outside entities were red flags to City Manager Spurlock regarding Plaintiff's leadership.[17]

On April 25, 2018, City Manager Spurlock received a copy of the 2017 Management Survey along with a press release from the Greenville Municipal Police Association ("GMPA"). She forwarded the press release and survey to the Mayor and members of the City Council.[18] The GMPA's press release described Plaintiff's "failures of leadership" and stated that "it is time for change."[19] The press release also proclaimed that the Police Department was "starved for true, professional leadership" and asked citizens to "express your concerns about the lack of leadership provided by Chief Busken and the deteriorating morale of your officers."[20]

In addition to receiving the survey and press release, City Manager Spurlock also spoke with Detectives Eric Camp and Brandon West of the Greenville Police Department. In each of her conversations, Detectives Camp and West expressed concerns about low morale and leadership in the Police Department.[21] In June 2018, City Manager Spurlock also met with the chairman of the GMPA, Robert Pemberton. During that meeting, Officer Pemberton also discussed the ongoing low morale in the Greenville Police Department, which he attributed to the leadership in the department.[22]

During the same period of time—March through June 2018—City Manager Spurlock was also attending meetings with Plaintiff in preparation for the City's upcoming budget proposal. During those budget meetings, City Manager observed that Plaintiff was not meeting her leadership expectations. Specifically, Plaintiff failed to show the expected concern for the

---

[16]    *Id.*
[17]    Appx. 00383, 126:14 – 17.
[18]    Appx. 00418.
[19]    Appx. 00454.
[20]    *Id.*
[21]    Appx. 00385 – Appx. 00386, 128:24 – 129:20.
[22]    Appx. 00320 – Appx. 00323, 63:1 – 66:10.

employees of his department. This culminated in June 2018 when, after a normal budget meeting, Plaintiff arranged a private meeting with City Manager Spurlock to ask for his own raise. In City Manager Spurlock's eyes, Plaintiff seemed more worried about getting himself a raise than getting his officers and civilian employees a raise despite the budgetary restraints.[23]

Taking into consideration her impression of Plaintiff along with all of the previous concerns raised to her by others about Plaintiff, City Manager Spurlock decided after the June 2018 budgetary meeting that Plaintiff's leadership was no longer right for the Greenville Police Department.[24]

On June 12, 2018, the Greenville City Council appointed Ms. Spurlock as the City Manager.[25] At the same City Council meeting, the City Council also discussed the 2017 Management Survey concerning the Plaintiff and the police department in executive session.[26] Just three days later, on June 15, City Manager Spurlock held a meeting with the City's Human Resources Director and Plaintiff in which she informed Plaintiff that he was being removed as Chief of Police.[27] City Manager Spurlock stated that Plaintiff's leadership was no longer right for the Police Department and that he was no longer fit to lead the department.[28]

At the same June 15 meeting, City Manager Spurlock acknowledged that Plaintiff had submitted a request for an FMLA leave, which had been approved that same day.[29] Plaintiff was given the option of either resigning with a separation agreement or being terminated at the end of

---

[23] Appx. 00325 – Appx. 00326, 68:6 – 69:5; Appx. 00382, 125:16 – 25.
[24] Appx. 00382,125:1 – 15.
[25] Appx. 00459.
[26] *Id.*
[27] Pl.'s Orig. Compl., ¶ 13.
[28] Appx. 00179 – Appx. 00180, 126:16 – 127:23; Appx. 00338, 81:3 – 11.
[29] Pl.'s Orig. Compl., ¶¶ 12-13.

his leave.[30] Later in June 2018, the City gave Plaintiff a draft of the proposed separation agreement.[31] Plaintiff ultimately decided that he would not accept the separation agreement.

On July 9, Plaintiff underwent back surgery and was scheduled for a 7-week leave.[32] However, Plaintiff's doctor later decided that Plaintiff needed additional time to recover.[33] Following Plaintiff's written request to extend his medical leave, the City agreed and extended the leave until October 26.[34]

On October 25, Plaintiff's doctor released Plaintiff to return to work with restrictions, and Plaintiff requested to return to work in a modified duty assignment.[35] Because Plaintiff had already been told some four months earlier in June that he was to be terminated at the end of his leave, the City denied his request as it had no modified duty assignment for him.[36] Instead, the City accommodated Plaintiff's alleged disability by again extending his medical leave through December 27.[37]

On December 27, Plaintiff's doctor again released Plaintiff to return to work with limitations.[38] After requesting a "Fitness for Duty" form and receiving it with the same limitations, the City again denied Plaintiff's apparently tactical request for a modified duty position and, instead, extended Plaintiff's paid leave.[39]

On January 31, 2019, Plaintiff's doctor gave him a full release to return to work without limitations.[40] The full release was sent to the City on February 4, and later that day, the City

---

[30]   *Id.* at ¶ 13.
[31]   Appx. 00006, Nos. 23–25.
[32]   Pl.'s Orig. Compl., ¶¶ 16.
[33]   *Id.*
[34]   *Id.* at ¶¶ 17–18.
[35]   *Id.* at ¶¶ 19–20.
[36]   *Id.* at ¶ 21.
[37]   *Id.*
[38]   *Id.* at ¶ 31.
[39]   *Id.* at ¶¶ 32–34.
[40]   *Id.* at ¶ 35.

informed Plaintiff that he had a February 11 meeting with City Manager Spurlock.[41] On February 11, Plaintiff met with City Manager Spurlock and he was formally and finally terminated as Chief of Police.[42]

## ARGUMENT AND AUTHORITIES

### 1.    Standard of review.

The purpose of a summary judgment is to isolate and dispose of factually unsupported claims.[43] Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[44] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[45] The substantive law identifies which facts are material.[46]

### 2.    This Court must dismiss Plaintiff's age discrimination claim under the ADEA because Plaintiff cannot establish a prima facie case and the City had a legitimate, nondiscriminatory reason for his termination.

The ADEA "prohibit[s] an employer from discharging an employee on account of that employee's age."[47] "Because there will seldom be eyewitness testimony as to the employer's mental processes, claims brought under [the ADEA] typically rely on circumstantial evidence that is evaluated under the burden-shifting framework first articulated in *McDonnell Douglas*."[48] "Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by

---

[41]   *Id.* at ¶ 36.
[42]   *Id.* at ¶ 38.
[43]   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[44]   Fed. R. Civ. P. 56(a).
[45]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[46]   *Anderson*, 477 U.S. at 248.
[47]   *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015); *see also* 29 U.S.C. § 623(a)(1).
[48]   *Goudeau*, 793 F.3d at 474 (internal quotations omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."[49]

"If the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination."[50] If the employer provides a legitimate, nondiscriminatory reason for termination, then the burden shifts back to the employee to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[51] In interpreting the ADEA, the United States Supreme Court requires a plaintiff to prove that age was the "<u>but-for</u>" cause of an employer's adverse employment decision to establish an ADEA claim.[52] The Fifth Circuit has also applied this stringent standard.[53]

In this instant lawsuit, Plaintiff's ADEA claim fails as a matter of law because (a) he was replaced by someone <u>older</u> than him and (b) City Manager Spurlock exercised her discretion to terminate Plaintiff as Chief of Police based on undisputed concerns with his leadership.

a.    **Plaintiff cannot establish a prima facie case of age discrimination because he was replaced by someone older than him.**

At the summary judgment stage, a plaintiff must establish a prima facie case of discrimination, through either direct or inferential proof.[54] As discussed above, to establish a prima facie case, a plaintiff must show, in part, that "he was either i) replaced by someone outside

---

[49]  *Goudeau*, 793 F.3d at 474.
[50]  *Id.*
[51]  *Id.* (internal quotation omitted).
[52]  *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009).
[53]  *See Alaniz v. U.S. Renal Care, Inc.*, 838 Fed. Appx. 77, 80 (5th Cir. 2020) (unpublished); *Goudeau*, 793 F.3d at 474; *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).
[54]  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see also Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).

the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."[55] In the instant case, Plaintiff cannot satisfy the fourth element that he was replaced by someone younger or otherwise discharged because of age.

First, the undisputed summary judgment evidence demonstrate that the Plaintiff was replaced by an **older** person as chief of police. In fact, Plaintiff admits that "[t]he person who replaced you as Chief of Police of the Greenville Police Department is older than you are."[56] At the time of his discharge, Plaintiff was 57 years old.[57] He was replaced as chief of police by Scott P. Smith, who was 60 years old at the time.

Furthermore, Plaintiff cannot show that he was otherwise discharged because of his age. A plaintiff "may show that he was 'otherwise discharged because of his age' by establishing that a comparable employee benefited from disparate treatment under 'nearly identical' circumstances—that is, the two employees 'held the same job or responsibilities, shared the same supervisor . . . and have essentially comparable violation histories.'"[58]

In the instant case, Plaintiff has not identified any "similarly situated" employees that were treated differently from him. The only employees identified by the Plaintiff are two patrol officers for the Greenville PD.[59] The two patrol officers obviously had different jobs and responsibilities in comparison with the Chief of Police, specifically as Plaintiff agrees that the job of Chief of Police is "more of an administrative role" that does not "go out on patrol duty."[60] Moreover, the patrol officers were supervised by various rank levels of the police department, while the Chief of Police

---

[55]   *Goudeau*, 793 F.3d at 474.
[56]   Appx. 00006, No. 22.
[57]   Pl.'s Orig. Compl., ¶ 5.
[58]   *Kim v. Hospira, Inc.*, 709 Fed. Appx. 287, 289 (5th Cir. 2018), *cert. denied*, 138 S. Ct. 2628, 201 L. Ed. 2d 1029 (2018) (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007); *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).
[59]   *See* Pl.'s Orig. Compl., ¶¶ 29-30; Appx. 00467, No. 11.
[60]   Appx. 00250 – Appx. 00251, 197:20 – 198:2.

had a different supervisor in the City Manager.[61] For these reasons, the patrol officers identified as "comparators" by Plaintiff are not "similarly situated" as a matter of law and, therefore, cannot support a showing that Plaintiff was otherwise discharged because of his age.

For these reasons, and even apart from the fact that his supervisor the City Manager did not find Plaintiff qualified to continue as Chief of Police, Plaintiff cannot establish a prima facie case of age discrimination under the ADEA. As such, this Court must dismiss Plaintiff's ADEA claim because the City is entitled to summary judgment on it as a matter of law.

**b.    City Manager Spurlock had a legitimate nondiscriminatory reason to discharge Plaintiff as Chief of Police.**

Even if this Court were to somehow determine that Plaintiff can establish a prima facie case of age discrimination, which Defendant City maintains he cannot, Plaintiff's ADEA claim against the City must still be dismissed because the City had a legitimate nondiscriminatory reason to discharge Plaintiff as Chief of Police. If a plaintiff is able to establish a prima facie case of age discrimination, the burden of production shifts to the defendant-employer to proffer a legitimate, nondiscriminatory reason for the adverse employment action.[62]  The United States Supreme Court has emphasized that "[t]his burden is only one of production, not persuasion," and that it cannot involve a credibility assessment.[63] Once the defendant-employer provides a nondiscriminatory reason for the adverse employment decision, the ultimate burden returns to the plaintiff to show that the decision was motivated by his disability and defendant's proffered reason was pretextual or blended with discriminatory motives.[64]

---

[61]   Appx. 00106, 53:20 – 23.
[62]   *Machinchick*, 398 F.3d at 350 (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003)).
[63]   *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).
[64]   *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014).

Here, the summary judgment evidence establishes beyond a genuine issue of material fact that City Manager Spurlock had a legitimate nondiscriminatory reason to remove Plaintiff as Chief of Police. Simply put, City Manager Spurlock exercised her discretion to terminate Plaintiff as Chief of Police because of the deficiencies in Plaintiff's management and leadership of the Police Department that she observed and of which she was made aware.[65] As City Manager Spurlock stated in her deposition: "his leadership was no longer right for our [police] department."[66]

The undisputed summary judgment evidence demonstrates that City Manager Spurlock considered the following factors in reaching her decision to terminate Plaintiff as Chief of Police:

- In April 2018, District Attorney Noble D. Walker and then-County Attorney Joel Littlefield met with City Manager Summer Spurlock, Mayor David Dreiling, Mayor Pro Tem Jerry Ransom, and City Attorney Daniel Ray and presented their concerns about the poor performance of the Greenville Police Department under the Plaintiff's management and leadership. These concerns from outside entities were red flags to City Manager Spurlock regarding Plaintiff's leadership.[67]

- City Manager Spurlock received a press release from the Greenville Municipal Police Association that described Plaintiff's "failures of leadership" and stated that "it is time for change."[68]

- City Manager Spurlock received a management survey conducted by the Texas Municipal Police Association.[69] The survey revealed problems in the Greenville Police Department, including that employees were treated unfairly and inequitably, employee input was not supported, employees feared retaliation for expressing their opinions about issues of concern, a lack of confidence in Plaintiff's ability to lead the department into the future, training was only to minimum standards, employees at all levels were not held accountable for their actions, employees faced inconsistent discipline, the department lacked a defined direction and goals, the department suffered from low morale that was not improving, and that employees were unwilling to finish their careers at the Greenville Police Department if the department continued "as is." Further, the survey results indicated that Plaintiff was a bad manager, was not concerned about employees,

---

[65] Appx. 00380 – Appx. 00382, 123:18 – 125:25.
[66] *Id.* at 125:14 – 15.
[67] Appx. 00296 – Appx. 00297, 39:23 – 40:15; Appx. 00299 – Appx. 00301, 42:10 – 44:20; Appx. 00383, 126:14 – 17.
[68] Appx. 00418.
[69] Appx. 00382, 125:10.

did not make staffing decision in the best interest of employees, did not regularly attend meetings and briefings with employees, and did not support employees.[70]

- City Manager Spurlock spoke with Detectives Eric Camp and Brandon West of the Greenville Police Department. Both detectives expressed concerns about low morale and leadership in the Police Department.[71]

- City Manager Summer Spurlock observed Plaintiff's conduct during and immediately after budget meetings from March 2018 to June 2018 in which he did not exhibit the expected leadership of or concern for the Greenville Police Department's employees.[72]

- In June 2018, the chairman of the Greenville Municipal Police Association, Officer Robert Pemberton, met with City Manager Summer Spurlock. During that meeting, Officer Pemberton discussed the ongoing low morale in the Greenville Police Department, which he attributed to the leadership in the department.[73]

It is undisputed that each of these events occurred, and all before Plaintiff filed a request for FMLA leave, and that City Manager Spurlock considered this information. Moreover, when City Manager Spurlock met with Plaintiff on June 15, 2018, to terminate him as Chief of Police, Plaintiff confirms in his deposition testimony that City Manager Spurlock made reference to his leadership of the Police Department.[74]

In fact, Plaintiff has, himself, confirmed the existence of much of this information. In his deposition testimony, Plaintiff admitted that he knew the GMPA was attempting to have him removed as Chief of Police.[75] Further, Plaintiff states that he was generally aware that the GMPA threatened that if Plaintiff was not removed as Chief of Police by June 15, 2018, then the GMPA would "go after [City Manager] Spurlock."[76] He also confirmed that then-County Attorney Littlefield had expressed concerns to the City and Plaintiff about the performance of the Police

---

[70]  Appx. 00012 – Appx. 00053.
[71]  Appx. 00385 – Appx. 00386, 128:24 – 129:20.
[72]  Appx. 00325 – Appx. 00326, 68:6 – 69:5, Appx. 00383, 125:16 – 25.
[73]  Appx. 00320 – Appx. 00323, 63:1 – 66:10.
[74]  Appx. 00179 – Appx. 00180, 126:16 – 127:23.
[75]  Appx. 00128, 75:13 – 25.
[76]  Appx. 00233, 180:9 – 19.

Department with the motivation of having Plaintiff removed as Chief of Police.[77] Plaintiff was also aware of the GMPA letter and the results of, and comments in, the management survey.[78]

Based on the undisputed summary judgment evidence, City Manager Spurlock had a legitimate, nondiscriminatory reason to terminate Plaintiff: his leadership was no longer right for the Greenville Police Department based on information of which she was aware and previously described herein and based on her own observations of Plaintiff. Because the City had a legitimate, nondiscriminatory reason to terminate Plaintiff, this Court must grant summary judgment in favor of the City and dismiss Plaintiff's age discrimination claim with prejudice.

3.    **This Court must dismiss Plaintiff's ADA claim for wrongful termination because Plaintiff cannot establish a prima facie case and the City had a legitimate, non-discriminatory reason for his termination.**

"Title II of the ADA prohibits an employer from discriminating against an employee who is a qualified individual with a disability on the basis of that disability."[79] "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas*."[80]

In this lawsuit, there is no direct evidence of ADA discrimination. The Fifth Circuit has defined "direct evidence" as "evidence which, if believed, proves the fact without inference or presumption."[81] "A statement or document which shows 'on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action [is] direct evidence of discrimination.'"[82] No such evidence exists in this case.

---

[77]   Appx. 00122 – Appx. 00128, 69:8 – 75:13.
[78]   Appx. 00155, 102:5 – 18; Appx. 00159 – Appx. 00161, 106:14 – 108:2.
[79]   *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (citing 42 U.S.C. § 12112(a)).
[80]   *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d at 688.
[81]   *Clark*, 952 F.3d at 579 (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).
[82]   *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005)).

Therefore, Plaintiff must proceed under the *McDonnell Douglas* burden-shifting analysis.[83] "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability."[84] The term "disability" means, with respect to an individual, "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment."[85]

a.   **Plaintiff cannot establish a prima facie case of ADA discrimination because he was not disabled at the time of his termination and he cannot show his termination was on account of a disability.**

Based on the summary judgment evidence, and putting aside the fact that his supervisor Ms. Spurlock did not consider him qualified for his position, Plaintiff clearly cannot establish the first or third element of his ADA discrimination claim.

First, Plaintiff's own pleadings and the summary judgment evidence demonstrate that Plaintiff was not disabled at the time of his termination. In his Complaint, Plaintiff alleges that his doctor gave him "a full release to return to work with no restrictions," which was provided to the City on February 4, 2019.[86] Plaintiff was terminated on February 11, 2019.[87] Based on Plaintiff's own allegations and the medical evidence provided by Plaintiff's doctor, he was not suffering from any disability and was not disabled at the time of his termination.

---

[83]   *See supra* Section 2 for a discussion of the *McDonnell Douglas* burden-shifting analysis.
[84]   *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (internal quotation omitted).
[85]   42 U.S.C. § 12102(1).
[86]   Pl.'s Orig. Compl., ¶ 35.
[87]   *Id*. at ¶ 37.

Plaintiff also conceded that he was not disabled in his deposition. When discussing whether or not he was disabled at the time of his termination, Plaintiff offered the following testimony:

> Q: At the time that you were ultimately terminated by the city in February of 2019, did you have a disability at that time?
>
> A: <u>I had recovered from my second major back surgery and I was given a release to return to work</u>. So, you know, I don't know that it would be considered any kind of disability at that point. Again, I think we're getting into legal definitions and questions that, you know. <u>Do I consider myself disabled at this point, no, I do not.</u>
>
> Q: Did you consider yourself disabled at the time you were terminated from the city?
>
> A: <u>No</u>, I was -- I was still recovering from a major surgery, but, you know, <u>I had demonstrated my ability to return to work.</u>
>
> Q: Were you having any -- at that time, were you having any sort of serious health issues that prevented you from doing day-to-day things?
>
> A: <u>No</u>.[88]

Based on Plaintiff's own deposition testimony, he was not disabled at the time of his termination on February 11, 2019.

Furthermore, Plaintiff cannot show that he was "regarded as" having a disability by the City at the time of his termination. As stated above, the summary judgment evidence shows that at the time of his termination the City was informed by Plaintiff that he had been fully released to return to work without limitations. Moreover, in response to the City's Request for Admissions, Plaintiff admits that City Manager Spurlock (the decisionmaker) never stated in his presence that "any disability or perceived disability was a factor in her decision to remove [Plaintiff] as Chief of Police."[89] Plaintiff also admits that no City employee ever stated in Plaintiff's presence that "any

---

[88]   Appx. 00212 – Appx. 00213, 159:18 – 160:10.
[89]   Appx. 00009, No. 43.

disability or perceived disability was a factor in City Manager Summer Spurlock's decision to remove [Plaintiff] as Chief of Police."[90] In addition, City Manager Spurlock also provided sworn deposition testimony that Plaintiff was fully recovered in accordance with his doctor's release at the time of his termination.[91] Finally, when asked the identify the basis for his ADA discrimination claim in his deposition, Plaintiff did not identify any behavior or conduct on behalf of the City or City Manager Spurlock that demonstrated that Plaintiff was regarded as having a disability.[92] Based on the pleadings and summary judgment evidence, Plaintiff cannot show that the City regarded him as having a disability at the time of his termination.

Because Plaintiff could return to work without limitations and was not otherwise regarded as disabled by the City at the time of his termination, Plaintiff cannot establish that he was disabled as defined under the ADA. For this reason alone, this Court should dismiss Plaintiff's ADA discrimination claim with prejudice.

In addition, the summary judgment record establishes that Plaintiff cannot satisfy his burden for the third element of his ADA discrimination claim—that he was terminated on account of his disability. To satisfy the third prong of an ADA employment discrimination claim, a plaintiff must demonstrate that he was discharged because of the alleged disability.[93] To demonstrate the requisite causation, a plaintiff must show that "'discrimination…actually play[ed] a role in the employer's decision making process and ha[d] a determinative influence on the outcome.'"[94] When a plaintiff seeks to prove a violation through circumstantial evidence—as is the case here—

---

[90]   Appx. 00010, No. 48.
[91]   Appx. 00392, 135:8-11.
[92]   Appx. 00219, 166:9 –20; Appx. 00220 – Appx. 00221, 167:14 – 169:2.
[93]   *See, e.g., Milton v. Tex. Dep't of Criminal Justice*, 707 F.3d 570, 573 (5th Cir. 2013).
[94]   *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503-04 (5th Cir. 2002) (quoting *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 835 (5th Cir. 2000)).

he bears the initial burden to offer evidence that his termination was motivated by an unlawful factor.[95]

In the instant case, Plaintiff cannot meet this burden. As discussed above, City Manager Spurlock did not regard Plaintiff as having a disability at the time of his termination. Quite the opposite; the undisputed evidence establishes that she believed he was fully recovered from his back surgery prior to his termination, and the advice of Plaintiff's physician to the City confirmed same.

Moreover, when asked to identify facts in support of his contention that his alleged disability was the reason for his termination, Plaintiff offered only that he had taken an FMLA leave[96] and his speculation that "the expenses associated with [his] medical history" may have been a factor.[97] Such speculation is insufficient to establish a causal link between Plaintiff's alleged, past disability and his termination. The fact that Plaintiff took an FMLA leave prior to his termination does not demonstrate discrimination under the ADA. Furthermore, Plaintiff admits in his deposition that he has no knowledge or specific evidence demonstrating that City Manager Spurlock reviewed his medical history or past medical claims before deciding to terminate him.[98]

For these reasons, Plaintiff cannot demonstrate that he was terminated on account of his disability. Therefore, he cannot meet his burden to establish a prima facie claim for ADA discrimination as a matter of law, and this Court should dismiss such a claim with prejudice.

---

[95]   *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).
[96]   Appx. 00219, 166:9 –20.
[97]   Appx. 00220 – Appx. 00222, 167:14 – 169:2.
[98]   Appx. 00221 – Appx. 00222, 168:13 – 169:2.

b.   **Defendant City had a legitimate non-discriminatory reason to discharge Plaintiff as chief of police.**

For the same reasons discussed in Section 2(b) herein, the City through its City Manager, had legitimate nondiscriminatory reasons for Plaintiff's termination. As such, his termination did not violate the ADA, and this Court should dismiss Plaintiff's ADA discrimination claim with prejudice.

4.   **This Court must dismiss Plaintiff's ADA failure-to-accommodate claim because Plaintiff cannot establish a prima facie case and the City did provide him with a reasonable accommodation.**

The ADA "requires an employer to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . .'"[99] To prevail on a failure-to-accommodate claim, a plaintiff must prove the following statutory elements: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."[100]

The Fifth Circuit has interpreted "a reasonable accommodation" as a method of accommodation that is reasonable in the run of cases.[101] As such, there are limits on the accommodations an employer must make.[102] For example, an employer is not required to transfer any of the essential functions of the job from the disabled employee.[103] In addition, an employer is not required to create a new "light duty" position for a disabled employee.[104]

---

[99]   *Delaval v. PTech Drilling Tubulars, LLC.*, 824 F.3d 476, 481 (5th Cir. 2016) (quoting 42 U.S.C. § 12112(b)(5)(A)).

[100]   *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

[101]   *See Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir.1996) (quotation omitted); *Windhauser v. Bd. Of Supervisors for La. State Univ. & Agr. & Mech. Coll.*, 360 Fed.Appx. 562, 567 (5th Cir.2010); *Medrano v. City of San Antonio*, 179 Fed. Appx. 897, 901 (5th Cir.2006).

[102]   *Riel*, 99 F.3d at 683.

[103]   *Barber v. Nabors Drilling, U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir.1997).

[104]   *See Moreno v. Brownlee*, 85 Fed.Appx. 23, 28 (5th Cir.2004) , *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996).

---

If an employee makes such a request for a reasonable accommodation, the employer is generally obligated to engage in an "interactive process."[105] However, the Fifth Court has stated that "there may be some situations in which the reasonable accommodation is so obvious that a solution may be developed without either party consciously participating in an interactive process."[106] "This is so because the 'interactive process is not an end i[n] itself—it is a means to the end of forging reasonable accommodations.'"[107] "The process must thus be viewed on a case-by-case basis."[108]

In the instant case, Plaintiff alleges that the City violated the ADA by failing to engage in the interactive process and denying Plaintiff's requested accommodation—namely, a modified duty assignment. Each of these allegations, while made separately, amount to only a single failure-to-accommodate claim.[109] Such a claim fails as a matter of law because (1) City Manager Spurlock had already told Plaintiff months prior to any request Plaintiff made for any accommodation that he would be terminated after his leave ended and would not be returning to work and (2) the City actually granted Plaintiff a reasonable accommodation.

First, Plaintiff's Complaint and the undisputed summary judgment evidence establishes that he was informed of his termination prior to making his request for a reasonable accommodation.[110] As discussed in Section 2(b) herein, City Manager Spurlock exercised her authority to remove Plaintiff as Chief of Police after observing what she believed to be leadership

---

[105] *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009).

[106] *See Picard v. St. Tammany Par. Hosp.*, 423 Fed. Appx. 467, 470 (5th Cir. 2011) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).

[107] *Id.* (quoting *Loulseged*, 178 F.3d at 736).

[108] *Id.* (quotation omitted).

[109] *See Allen v. Rapides Par. Sch. Bd.*, 204 F.3d 619, 622 (5th Cir. 2000) (A failure to engage in the interactive process alone is not sufficient to establish an ADA claim when the employee receives a reasonable accommodation); *Eubank v. Lockhart Indep. Sch. Dist.*, 229 F. Supp. 3d 552, 560 (W.D. Tex. 2017), *aff'd*, 734 Fed. Appx. 295 (5th Cir. 2018) ("Because the interactive process is not an end in itself, it is not sufficient for [an employee] to show that [an employer] failed to engage in an interactive process or that it caused the interactive process to break down.") (quotation omitted).

[110] *See* Pl.'s Orig. Compl., ¶ 13; Appx. 00008, No. 35.

---

deficiencies. Plaintiff confirms in his deposition testimony that City Manager Spurlock made reference to his leadership of the Police Department when she notified him of his removal as Chief of Police on June 15, 2018.[111]

Because Plaintiff had already been notified that he would be terminated after his medical leave and would not be returning to work for the Greenville Police Department months before Plaintiff requested any accommodation for his alleged disability, any such request was unreasonable as a matter of law. As affirmed by the Fifth Circuit, Northern District of Texas precedent has previously held that a "second chance" or "fresh start" for past conduct warranting termination is not a "reasonable accommodation."[112] For the reasons stated above herein, City Manager Spurlock had legitimate reasons to terminate Plaintiff that predated any request by Plaintiff for a modified duty position. Because Plaintiff's requested accommodation was unreasonable as a matter of law, he cannot satisfy his burden to establish a prima facie case for a failure-to-accommodate claim.  Just why a Plaintiff would advance such requests months after being told he would be terminated is fairly transparent, but whatever his motives, the legal authorities discussed above establish in any case that Plaintiff's requests provide no basis for a claim upon which he may recover under these circumstances.

Moreover, as the undisputed summary judgment evidence establishes, the City actually did grant Plaintiff an obvious reasonable accommodation for his alleged disability by extending his paid leave until he was fully recovered from his back surgery.[113] While the City Manager did not rescind her June advice to Plaintiff that he would be terminated, and Plaintiff thus did not

---

[111]   Appx. 00179 – Appx. 00180, 126:16 – 127:23.
[112]   *See Green v. Medco Health Sols. of Tex., LLC*, 947 F. Supp. 2d 712, 729 (N.D. Tex. 2013), *aff'd sub nom.*, 560 Fed. Appx. 398 (5th Cir. 2014) (citing *Brookins v. Indianapolis Power & Light Co.*, 90 F. Supp. 2d 993, 1006–08 (S.D. Ind. 2000) (citing *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666–67 (7th Cir. 1995))); *Iqbal v. City of Pasadena*, 2020 WL 411107, at *3 (S.D. Tex. 2020) (citing *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017)).
[113]   *See* Appx. 00392, 135:1 – 11.

receive his desired accommodation (a modified duty position), "[t]he ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation."[114] That reasonable accommodation was the City allowing and funding an extended leave. Notably, while on the extended leave, Plaintiff continued to receive his full pay and receive his full benefits.[115] Plaintiff remained on this fully paid extended leave until he was fully released to work without limitations by his doctor.[116] As such, the City provided Plaintiff with an obvious reasonable accommodation in accordance with the ADA—even though they already had legitimate reason to terminate him.

For these reasons, there is no genuine issue as to any material fact (1) that Plaintiff's requested accommodation was unreasonable as a matter of law and, alternatively, (2) that the City gave Plaintiff a reasonable accommodation by extending his leave and benefits until he fully recovered from his alleged disability. Therefore, the City is entitled to summary judgment as a matter of law, and the Court must dismiss Plaintiff's ADA failure-to-accommodate claim with prejudice.

**5.    This Court must dismiss Plaintiff's FMLA retaliation and entitlement claims.**

The FMLA provides two distinct protections for employees: (1) protection from retaliation or discrimination for exercising FMLA rights and (2) a series of entitlements or substantive rights.[117] In this lawsuit, Plaintiff brings an FMLA retaliation claim and an FMLA entitlement claim.[118] The City is entitled to summary judgment on both claims.

---

[114]   *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (quotation omitted).
[115]   Appx. 00355, 98:3 – 19; Appx. 00225 – Appx. 00226, 172:1 – 173:24.
[116]   Appx. 00392, 135:1 – 11.
[117]   *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 834 (5th Cir. 2020).
[118]   Pl.'s Orig. Compl., ¶¶ 60-61.

a.   **Plaintiff's FMLA retaliation claim must be dismissed the City had a legitimate, non-discriminatory reason for his termination.**

A retaliation claim for exercising FMLA rights is subject to the *McDonnell Douglas* burden-shifting framework discussed above herein.[119] To make a prima facie case, an employee must show that "(1) he engaged in a protected activity, (2) the employer discharged him, and (3) there is a causal link between the protected activity and the discharge."[120]

In this instant lawsuit, Plaintiff alleges that the City retaliated against him for taking an FMLA leave by terminating him. However, the summary judgment evidence demonstrates that the City had a legitimate, nondiscriminatory reason for Plaintiff's termination and that the bases for that decision all predated any leave request by Plaintiff. For the same reasons discussed above herein,[121] City Manager Spurlock exercised her discretion as the newly-hired City Manager to terminate Plaintiff based on her assessment of his leadership deficiencies. While Plaintiff may disagree with City Manager Spurlock's judgment, the undisputed summary judgment evidence establishes that that basis and contributing factors—which were each independent from and predated Plaintiff's FLMA leave—existed and were known by City Manager Spurlock at the time she made the decision to terminate Plaintiff.

For these reasons, the City is entitled to judgment as a matter of law, and the Court must dismiss Plaintiff's FMLA retaliation claim with prejudice.

b.   **Plaintiff's FMLA entitlement claim must be dismissed because the City had decided to terminate him prior to his taking FMLA leave.**

As a general rule under the FMLA, upon an employee's return from a qualified leave, an employer must restore the employee to either "the position of employment held by the employee

---

[119]   *See* discussion *supra* Section 2.
[120]   *Amedee*, 953 F.3d at 835 (quoting *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)).
[121]   *See* discussion *supra* Section 2(b).

when the leave commenced" or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[122] However, "an employee's right to return to work after a qualified absence is not unlimited."[123] Instead, "an employee must actually be entitled to the position to which he seeks reinstatement."[124] The Fifth Circuit has repeatedly reasoned that "a plaintiff's right to reinstatement was 'extinguished by [the employer's] exercise of [its] prerogative' when it terminated [the employee] for 'otherwise appropriate' reasons unrelated to [the employee's] exercise of rights secured by the FMLA."[125] Therefore, an employer may challenge an employee's entitlement to return "by offering evidence that the employee would have lost his position even had he not taken FMLA leave."[126]  Rather directly on point herein, "Employees cannot immunize themselves from legitimate termination by taking FMLA leave."[127]

Here, Plaintiff claims that the City violated the FMLA by failing to restore him "to his position of Chief of Police or a similar position" at the end of his leave.[128] This claim completely ignores a simple fact: City Manager Spurlock indisputably informed Plaintiff of his termination prior to him taking his FMLA leave.[129] Moreover, the summary judgment evidence (as discussed extensively herein) demonstrates without a genuine issue of material fact that the City would have lawfully terminated the Plaintiff had he not taken leave. As such, Plaintiff had no right to return to work.

---

[122]  29 U.S.C. § 2614(a)(1).

[123]  *Amedee*, 953 F.3d at 836 (citing 29 U.S.C. § 2614(a)(3) ("Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."); 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement . . . than if the employee had been continuously employed during the FMLA leave period."); *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 682 (5th Cir. 2013) (noting the numerous authorities supporting that view)).

[124]  *Id.* (quoting *Shirley*, 726 F.3d at 682).

[125]  *Shirley*, 726 F.3d at 682 (citing *Grubb v. Southwest Airlines*, 296 Fed. Appx. 383, 391 (5th Cir.2008)); *see also Amedee*, 953 F.3d at 836.

[126]  *Amedee*, 953 F.3d at 836 (quoting *Shirley*, 726 F.3d at 682).

[127]  *Id.*

[128]  Pl.'s Orig. Compl., ¶ 60.

[129]  *See id.* at ¶¶ 12-13.

Furthermore, the summary judgment evidence demonstrates that Plaintiff in fact indeed attempted to "immunize" himself from termination by taking an FMLA leave. Prior to him requesting an FMLA leave, Plaintiff admits he knew that the local police association had demanded his termination and was pressuring City Manager Spurlock to remove Plaintiff as Chief by June 15, 2018.[130] With this knowledge in hand, Plaintiff submitted his request for FMLA leave on June 14, 2018—just one day before his possible termination.[131] Regardless of Plaintiff's efforts to immunize himself by requesting an FMLA leave, City Manager Spurlock had decided to terminate Plaintiff for legitimate reasons prior to learning about his request for FMLA leave. And as the evidence previously discussed herein establishes, all of the factors and reasons considered by City Manager Spurlock had occurred or been presented to her prior to Plaintiff requesting any FMLA leave.

For these reasons, there is no genuine issue of material fact presented and certainly no allegation that Plaintiff did not receive all of the FMLA leave he requested and was entitled to and also extended leave. The undisputed evidence shows Plaintiff would have lost his position even had he not taken FMLA leave. As such, the City is entitled to judgment as a matter of law, and the Court must dismiss Plaintiff's FMLA entitlement claim with prejudice.

6.      **Plaintiff does not have a property interest in his former position as Chief of Police.**

To assert a due process claim in the public employment context, it is well-established that a plaintiff must prove a clearly-established property interest in his employment.[132] "The Due Process Clause of the Fourteenth Amendment does not create a property interest in government employment."[133]

---

[130]    Appx. 00179 – Appx. 00180, 126:16 – 127:23.
[131]    Pl.'s Orig. Compl., ¶ 12.
[132]    *Schultea v. Wood*, 27 F.3d 1112, 1116 (5th Cir. 1994); *Moulton v. City of Beaumont*, 991 F.2d 227, 229 (5th Cir. 1993).
[133]    *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997).

Such a property interest must be shown to exist by operation of a contract, law, or policy established under state law.[134] "Property interests are created and their dimensions are defined by existing rules or understandings under state law."[135] As an employment-at-will state, employment relationships in Texas are terminable at will by either party absent a specific contract to the contrary.[136]

In the instant case, Plaintiff has no property interest in his former position as Chief of Police. First, Plaintiff admits he was an at-will employee and did not have an employment contract between himself and the City.[137] As discussed above, the evidence establishes that Plaintiff was removed from his position as Chief of Police because City Manager Spurlock did not believe his leadership was right for the Police Department—not for any disciplinary reasons or as a result of violations of City policies.

Admittedly, the precise legal basis of Plaintiff's "property interest" claim brought under 42 U.S.C. § 1983 is unclear because he has not identified the "State law" that creates the alleged "property interest." Plaintiff asserts that he was "never served with any complaint regarding any alleged "deficiencies in leadership.""[138]  There is no evidence that this was a disciplinary matter, as noted the City Manager has said it was not, and Plaintiff has not provided any evidence to the contrary.  Nonetheless, it appears that Plaintiff is attempting to assert a property interest in his position as Police Chief based on Texas Government Code § 614.023(b).[139]

---

[134]  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Cabrol*, 106 F.3d at 105.
[135]  *Williams v. Texas Tech Univ. Health Sciences Ctr.*, 6 F.3d 290, 293 (5th Cir. 1993).
[136]  *Benjamin v. City of Watauga, Texas*, 841 F. Supp. 2d 1010, 1014 (N.D. Tex. 2012) (citing *Moulton*, 991 F.2d at 230).
[137]  Appx. 00006, Nos. 23-24.
[138]  Pl.'s Orig. Compl., ¶ 67.
[139]  Pl.'s Orig. Compl., ¶ 67; Appx. 00245 – Appx. 00246, 192:19 – 193:8; Tex. Gov't Code § 614.023(b) ("Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.").

However, Plaintiff's reliance on § 614.023 is misplaced. The Fifth Circuit has repeatedly rejected the existence of such a property interest in Chapter 614.[140] Moreover, the Texas Supreme Court has unequivocally stated that the requirements of Chapter 614 do not "equate to an entitlement to continued employment or a modification of the at-will employment relationship."[141] Because Plaintiff has no property interest in his former position as Chief of Police and § 614.023(b) does not create a property interest,  and no other legal basis has been advanced by Plaintiff for same, this Court must dismiss Plaintiff's § 1983 claim against the City with prejudice.

## Conclusion

As previously discussed, the law is clear that an employee cannot immunize himself from lawful termination by taking FMLA leave. This is particularly so when all of the considerations for termination are presented before the leave is requested or taken. Similarly, age discrimination claims ring hollow when the employee is replaced by an older person and disability discrimination claims likewise fail when the employee's physician advises they are not disabled. In any case, the City Manager clearly had a legitimate non-discriminatory basis to relieve Plaintiff of his position given the evidence herein.

 For these reasons, and in light of the foregoing evidence, arguments and authorities, summary judgment for Defendant, City of Greenville, Texas, on each and every claim asserted by Plaintiff is proper and warranted as a matter of law. Defendant City therefore respectfully requests that this Court grant its Motion for Summary Judgment in its entirety, dismiss Plaintiff's

---

[140] *See Sims v. City of Madisonville, Tex.*, 894 F.3d 632, 641–42 (5th Cir. 2018); *Stem v. Gomez*, 813 F.3d 205, 213 (5th Cir. 2016).
[141] *Colorado Cty. v. Staff*, 510 S.W.3d 435, 446 (Tex. 2017).

Original Complaint and all claims against Defendant City with prejudice to the refiling of same, and grant Defendant City all other relief to which it may be justly entitled.

Respectfully submitted,

By: /s/ Darrell G-M Noga
DARRELL G-M NOGA
Texas Bar No. 00785326
darrell@brownfoxlaw.com
CHRISTOPHER A. KLEMENT
Texas Bar No. 24090212
chris@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone:  (214) 327-5000
Facsimile:   (214) 327-5001

**ATTORNEYS FOR DEFENDANT**
**CITY OF GREENVILLE, TEXAS**

## CERTIFICATE OF SERVICE

On April 2, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Darrell G-M Noga
DARRELL G-M NOGA