**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DANIEL BUSKEN** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:19-cv-2808** |
| | § | |
| | § | |
| **CITY OF GREENVILLE, TEXAS** | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS RESPONSE TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENTAND BRIEF IN SUPPORT OF  (dkt #21 & 22)**

# TABLE OF CONTENTS

Table of Contents…………………………………………………………………..………..i

Table of Authorities………………………………………………………………………i

Summary…………………………………………………………………………………1

Facts Precluding Summary Judgment…………………………………………………….3

Argument and Authorities………………………………………………………………7

    A.  Summary Judgment Standard of Review…………………………………………..7

    B.  ADEA Prima Facie Case Established………………………………………………8

    C.  Defendant's Alleged Bases for Discharge Are Pretextual…………………………11

        1.  Shifting Reasons for discharge……………………………………………11
        2.  No documentation of basis for discharge…………………………………11

    D.  Plaintiff Has Established a Prima Facie Case of ADA Discrimination……………..12

    E.  Defendant Ignored Its Own Written Policy………………………………………14

    F.  Defendant's Alleged Basis for Discharge Is Pretextual……………………………15

    G.  Prima Facie Case of Failure to Accommodate Established…………………………15

    H.  Plaintiff's FMLA Retaliation and Entitlement Claim are Supported by the Summary Judgment Evidence and Defendant's Motion for Summary Judgment Should Be Denied…………………………………………………………………18
        1.  Plaintiff has established a prima facie case of FMLA retaliation………….18
        2.  Plaintiff's FMLA entitlement claim is meritorious because Defendant decided to discharge Plaintiff after approving his leave…………………….…….20

Conclusion………………………………………………………………………………21

Certificate of Service……………………………………………………………………23

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Acker v. Gen. Motors, LLC*
853 F.3d 784, 790 (5th Cir. 2017)……………………………………………………………..18

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*
482 F.3d 408 (5th Cir. 2007)…………………………………………………………………...12

*Caldwell v. KHOU-TV*
850 F.3d 237, 242 (5th Cir. 2017)……………………………………………………………...11

*Cannon v. Jacobs Field Servs. N. Am., Inc.*
813 F.3d 586 (5th Cir. 2016)……………………………………………………………………14

*EEOC v. Agro Distrib.*
555 F.3d 462, 471 (5th Cir. 2009)………………………………………………………………17

*E.E.O.C. v. LHC Group, Inc.,*
73 F.3d 688, 697 (5th Cir. 2014)……………………………………………………………….12

*Evans v. Houston*
246 F.3d 344, 354 (5th Cir. 2001)………………………………………………………………19

*Feist v. La., Dep't of Justice, Offc. of the Atty. Gen.*
730 F.3d 450, 452 (5th Cir. 2013)………………………………………………………………15

*Garcia v. Professional Contract. Services, Inc.*
No. 18-50144 (5th Cir. 2019)…………………………………………………………………...10

*Goudeau v. National Oilwell Vacco, LP*
743 F.3d 470, 477 (5th Cir. 2015)………………………………………………………………16

*Heinsohn v. Carabin & Shaw, P.C.*
832 F.3d 224 (5th Cir. 2016)……………………………………………………………………12

*Jenkins v. Cleco Power, LLC*
487 F.3d 309, 315 (5th Cir. 2007)………………………………………………………………17

*Laxton v. Gap, Inc.*
333 F.3d 572, 581 (5th Cir. 2003)………………………………………………………………12

*Lee v. Kan. City Ry. Co.*
574 F.3d 253, 260, 261 (5th Cir. 2009)………………………………………………………10, 11

*Lloyd v. Georgia Gulf Corp.*
961 F.2d 1190 (5th Cir. 1992)…………………………………………………………12

*Long v. Eastfield Coll.*
88 F.3d 300 note 4 (5th Cir. 1996)…………………………………………………..21

*Loulseged v. Akzo Nobel Inc.*
178 F.3d 731, 736 (5th Cir. 1999)……………………………………………………17

*Machinchick v. PB Power, Inc.*
398 F.3d 345,355 (5th Cir. 1005)……………………………………………………20

*Mauder v. Metro. Transit Auth. Of Harris Cty.*
 *Tex.,* 446 F.3d 574, 583 (5th Cir. 2006)……………………………………………18

*Medina v. Ramsey Steel Co.*
238 F.3d 674, 684 (5th Cir.2001)……………………………………………………..21

*Nasti v. CIBA Specialty Chemicals Corp.*
492 F.3d 589, 594 (5th Cir. 2007)…………………………………………………...11

*Reeves v. Sanderson Plumbing Products, Inc.*
530 U.S. 133, 147 (2000)……………………………………………………………..12

*Richardson v. Monitronics Int'l, Inc.*
434 F.3d 327, 332 (5th Cir. 2005)…………………………………………………18, 20

*Sandstad v. CB Richard Ellis, Inc.*
309 F.3d 893, 897 (5th Cir. 2002)…………………………………………………...8

*Smith v. City of Jackson, Miss.*
351 F.3d 183, 196 (5th Cir. 2003)……………………………………………………8

*Swanson v. Gen. Servs. Admin.*
110 F.3d 1180, 1188 (5th Cir. 1997)…………………………………………………19
*Vaughn v. Woodforest Bank*
665 F.3d 632 (5th Cir. 2011)………………………………………………………8, 12

*Wilson v. Lemington Home for the Aged*
159 F.Supp.2d 186, 195-96 (W.Div.Pa, 2001)………………………………………21

*Zenor v. El Paso Healthcare System, Ltd.*
176 F.3d 847, 853 (5th Cir. 1999)……………………………………………………13

**Rules**

Fed. R. Civ. P. 56………………………………………………………………….7

**Codes**

29 C.F.R. § 1630.2(1) …………………………………………………………...14
42 U.S.C.A. § 12102(1)(c)…………………………………………………………14
42 U.S.C.A. § 12102(2)(A)…………………………………………………………14
42 U.S.C.A. § 12103(1)(A)…………………………………………………………14
42 U.S.C. § 12112(a)………………………………………………………………15
42 U.S.C. § 12112(b)(5)(A)………………………………………………………..15

## I. SUMMARY

Plaintiff, a master police officer, was employed for over eight (8) years by the Defendant as its Chief of Police.

Plaintiff informed City Manager Spurlock and Human Resources Director Jaynice Porter-Braithwaite in May 2018 that he would undergo major back surgery as soon as his physician, Dr. Jeremy Denning, could schedule the procedure.

The FMLA paperwork and physician's certificate were completed and submitted to Defendant's human resources department on or about June 14, 2018.

On June 15, 2018, Plaintiff's FMLA leave was approved.

Defendant's City Manager, Summer Spurlock, scheduled a meeting with Plaintiff and Human Resources Director, Jaynice Porter-Braithwaite, to occur on or about June 15, 2018. Defendant admits Plaintiff's FMLA leave was approved prior to the meeting.

Spurlock informed Plaintiff at this meeting that he could resign or be discharged. Spurlock gave no reason for her decision.

Defendant had not informed Plaintiff his employment was in jeopardy prior to the June 15, 2018 meeting. Nor had Spurlock offered any criticism of Plaintiff's job performance. Plaintiff had never received any disciplinary during his eight years as Defendant's Chief of Police under three City Managers.

Spurlock informed Plaintiff he had the option to resign and sign a severance agreement or be discharged after his FMLA leave expired.

The severance agreement required Plaintiff to release any and all claims he might have against Defendant including claims under the ADEA, ADA and FMLA. Plaintiff refused to resign and sign away all his rights.

Defendant refused any reasonable accommodation to Plaintiff even though it was Defendant's written policy to do so. Defendant stated in writing it had no light or modified duty in the police department when this was not true.

Defendant required Plaintiff to obtain a fitness-for-duty exam when it had no intention of restoring Plaintiff to work. Defendant's reason was "[w]ell, we didn't want to be heartless. . ." Spurlock deposition, 97:4-98:12, PageID 520-521.

Defendant failed to engage in any interactive process. Defendant refused to consider any reasonable accommodation even though it was its written policy to do so. Defendant claimed falsely that no light duty or modified duty positions were available in the police department when younger officers were granted such accommodation.

Defendant made the decision to discharge Plaintiff after it learned he would be undergoing major back surgery and require substantial recovery time.

Plaintiff was notified of his discharge after FMLA leave had been approved by Defendant.

Defendant claims its sole reason for discharging Plaintiff was that he asked for a raise in a private meeting with the Defendant's City Manager.

Defendant's stated reason for discharge is incredulous on its face. The incredulity is demonstrated by the fact no one ever Defendant's city manager never informed Plaintiff that she was displeased with Plaintiff because of the request. In fact, Defendant never communicated any criticism to Plaintiff. Plaintiff was informing the new city manager that city policy required the Chief of Police's pay be 5% higher than the Assistant Chief's pay.

Plaintiff contends the competent, summary judgment evidence will support a prima facie case under the ADEA, ADA and FMLA claims.

## III. FACTS PRECLUDING SUMMARY JUDGMENT

Plaintiff was employed by the City of Greenville, Texas for over eight (8) years in its Police Department.  From on or about September 27, 2010 to his discharge on or about February 11, 2019, he was employed as the Chief of Police.  At the time of his discharge, Plaintiff was 57 years of age.

In March 2016, Plaintiff underwent an L-3 to S-1 fusion and decompression.  In 2017, he began experiencing worsening pain and numbness in his left leg.  His pain doctor referred him to a back surgeon.

In May 2018, Dr. Jeremy Denning determined Plaintiff needed back surgery.

Plaintiff immediately informed Summer Spurlock, then Acting City Manager (approximately 35-39 years old), and Jaynice Porter-Brathwaite, Human Resources Director (approximately 50 years old).

In June 2018, the surgery was scheduled for July 9, 2018 and Plaintiff's surgeon advised Plaintiff would need to remain off work for at least seven (7) weeks post-surgery.  Plaintiff informed the HR department of this when he requested the FMLA form.  Plaintiff returned the FMLA form on June 14, 2018 and his FMLA leave was approved on June 15, 2018 to begin on July 9, 2018, the date of surgery, and expected to end on or about September 28, 2018.  Appx 00001.

On or about June 15, 2018, Plaintiff was called into a meeting with Ms. Porter-Brathwaite and Ms. Spurlock.  Ms. Spurlock told him the City was drafting a Separation Agreement for his resignation.  If he did not sign, he would be terminated upon his return from FMLA leave.  Plaintiff was informed that he would have 21 days to accept the Agreement and he was being placed on

Administrative Leave with pay until his FMLA leave began. Plaintiff was told if he did not accept the Agreement, he would be discharged when his FMLA expired.

No reason was given for placing Plaintiff on Administrative Leave.  Pursuant to the City's written policy manual, Administrative Leave (with or without pay) is used pending an investigation or review of an infraction.  It is not considered a disciplinary action and thus is not appealable.

Ms. Porter-Brathwaite later told Plaintiff his removal as chief of police was not related to rules violations or performance issues.  Appx 00005.

On July 9, 2018, Plaintiff underwent lumbar spinal fusion with bone growth stimulator. His surgeon, Dr. Jeremy Denning, initially took him off work for seven weeks.  Following his second post-op examination on September 6, 2018, Dr. Denning determined Plaintiff needed an additional seven weeks off work.

In correspondence dated September 13, 2018, Plaintiff requested reasonable accommodation to extend his FMLA leave, which was due to expire on September 28, 2018, to his next doctor appointment and evaluation.

In correspondence dated September 16, 2018, Ms. Porter-Brathwaite informed Plaintiff his medical leave was extended through October 26, 2018.

On October 25, 2018, Dr. Denning released Plaintiff to return to work with restrictions including no lifting over 20 pounds, limited bending and twisting at the waist as determined by lumbar brace mobility, must have the ability to stand and walk around every hour, and must refrain from wearing the full duty belt.  Appx 000013

Plaintiff requested a modified duty assignment within the parameters of those restrictions.

On November 5, 2018, Ms. Porter-Brathwaite informed Plaintiff the City did not have modified duty assignments within the Greenville Police Department.  Instead, his medical leave was extended through December 27, 2018.  Appx 000015.

In correspondence dated November 17, 2018, Plaintiff renewed his request for a modified duty assignment and pointed out to Ms. Porter-Brathwaite that the City's Personnel Manual specifically states it is the goal of the City to locate and assign restricted work assignments when necessary and feasible to employees who are temporarily restricted from performing the essential functions of his/her job as a result of a work related or non-work related injury or illness.  Appx 000017.

Indeed, the restrictions outlined by Dr. Denning would have had little or no effect on Plaintiff's ability to perform his duties as chief of police, which were largely administrative and supervisory.  Appx 000031-36.

Ms. Porter-Brathwaite again denied Plaintiff a modified duty assignment on November 27, 2018.   She stated that a Modified Duty Assignment is not a guaranteed benefit and the determination whether to grant it to Plaintiff is at the discretion of the City Manager (Ms. Spurlock).  Appx 000038.

Plaintiff had never experienced any FMLA problems until the new city manager was hired.

In 2012, Plaintiff had a knee scoped and returned to work after a short leave wearing a large knee brace and using crutches.  Defendant did not consider these to be deterrents to him performing his duties.

In 2015, Plaintiff had a partial shoulder replacement and again returned to work after a short leave with his arm in a sling for several weeks.  Defendant allowed Plaintiff to continue to perform his duties.

In March 2016, Plaintiff had back surgery for the first time. His doctor completed the FMLA paperwork and he turned it into Defendant's human resources department. Plaintiff returned to work after a few weeks of recovery with restrictions from his doctor including no bending, lifting, or twisting. Over time, the doctor reduced and eventually lifted the restrictions altogether. Defendant did not question Plaintiff's ability to do his job as chief of police with those restrictions.

Other Greenville Police Department officers received modified duty assignments.

In summer 2018, Bobby Wooldridge, patrol officer (approximately 40 years old), was assigned to dispatch while recovering from a knee or ankle injury. He has received previous modified duty assignments.

Also, in summer 2018, Stephen Carper, patrol officer (approximately 30-35 years old), was given a modified duty assignment. He has had other injuries during his time with the department and received previous modified duty assignments.

On December 27, 2018, Dr. Denning again released Plaintiff to return to work with lightened restrictions including no lifting over 50 pounds and avoiding repetitive bending and twisting. The restrictions were to continue until his next follow up visit scheduled for January 31, 2019. Appx 000040.

On January 7, 2019, in response to Dr. Denning's note, Defendant, through Ms. Porter-Brathwaite, requested Dr. Denning provide additional information by completing its "Fitness-for-Duty" form. Appx 000042.

On January 11, 2019, the completed "Fitness-for-Duty" form was returned to Defendant. Dr. Denning reiterated the restrictions contained in his December 27, 2018 release. Appx 000044-46.

In correspondence from Ms. Porter-Brathwaite dated January 15, 2019, Defendant again denied Plaintiff modified duty.  Appx 000048.

On January 31, 2019, Plaintiff received a full release to return to work with no restrictions from Dr. Denning and forwarded it to Ms. Porter-Brathwaite with a request to return to work on Monday, February 4, 2019.  Appx 000050.

On February 4, 2019, Plaintiff received correspondence from Ms. Porter-Brathwaite advising him of a meeting with the City Manager (Spurlock) scheduled for February 11, 2019. The same day Plaintiff received a voice mail from Penny Perryman in the human resources department to call her in reference to his return to work date.

In the meeting on February 11, 2019 with Ms. Porter-Brathwaite and Ms. Spurlock, Ms. Spurlock informed Plaintiff he was being discharged from his position as Chief of Police for Greenville Police Department.  She further told him she had a resignation letter and a termination letter prepared.  Either way, she needed a decision from him right away.

Plaintiff refused to sign the resignation letter.  Ms. Spurlock's termination letter stated the decision was final and would not be modified.  She gave no reason in the letter for his termination. Appx 000052.

## IV. ARGUMENT AND AUTHORITIES

### A. Summary Judgment Standard of Review

The court must review all evidence in the light most favorable to the non-movant.  Fed. R. Civ. P. 56.

All reasonable inferences are made in the non-movant's favor.

The court does not weigh the evidence or make credibility determinations.

The court also must disregard any evidence favorable to the movant that the jury is not required to believe.  *Vaughn v. Woodforest Bank,* 665 F.3d 632 (5th Cir. 2011); *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002).

## B.      ADEA Prima Facie Case Established

To prove a prima facie case of discrimination based on age, Plaintiffs are required to prove: 1) "they are within the protected class"; 2) "they are qualified for the position"; 3) "they suffered an adverse employment decision"; and 4) "they were replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)."  *Smith v. City of Jackson, Miss.,* 351 F.3d 183, 196 (5th Cir. 2003) (citations omitted).

Defendant only contests the fourth prima facie element.  PageID 140.

Plaintiff contends the summary judgment evidence shows that younger police officers were allowed modified or light duty assignments.

Defendant's Personnel Manuel specifically states it is Defendant's goal to "make every possible effort to assign modified duty assignments to those employees on restricted or modified work status":

"**Section 20.1 Purpose and Scope**
"It is the goal of the City, with the cooperation of all departments, to locate and assign restricted work assignments when necessary and feasible, to employees who are temporarily restricted from performing the essential functions of his/her job as a result of a work related or non-work related injury or illness.

"**Section 20.2 Policy**
"The City will make every possible effort to assign modified duty assignments to those employees on restricted or modified work status.  Proposed modified duty assignments must include duties that benefit the City and provide needed services to the citizens of Greenville.  Assignment to modified work duty is at the discretion of the department head subject to approval by the Human Resource Director." Appx 000025.

Defendant's Human Resources Director wrote to Plaintiff on November 5, 2018 that "there are no modified duty assignments at the Police Department." Appx 000015.

This statement was false since Defendant's own Personnel Manuel specifically states Defendant's policy was to accommodate. Appx 000025.

Subsequently on January 7, 2019, Defendant's Human Resources Director wrote to Plaintiff stating Defendant will "further consider your request . . ." for light duty. Defendant requested Plaintiff to provide a fitness for duty update from his physician, Dr. Jeremy Denning. Appx 000027.

On January 15, 2019, the Human Resources Director, after receiving the Fitness-for-Duty Medical Certification from Dr. Denning, denied Plaintiff's request for modified duty without explanation. Appx 000048.

Defendant contradicts its own written policy by falsely stating there are no modified or light duty positions in the police department.

Furthermore, Defendant instructs Plaintiff to provide a fitness for duty certification on the false pretense it will consider a modified duty assignment.

Of course, Defendant denied the request without explanation on January 15, 2019. Appx 000048.

Defendant's conduct is false and misleading on its face. The only substantive accommodation Plaintiff requested was the requirement to lift and carry up to 100 pounds. Appx 000032.

The summary judgment evidence demonstrates Plaintiff was treated less favorably than other police officers.

Defendant argues that the other younger police officers are not similarly situated enough to be comparators.  Defendant's argument is not supported by the facts or the law.

Plaintiff and the younger comparators were police officers sworn to enforce the law.  While their day-to-day duties differed, they were police officers.

Defendant's Personnel Manual regarding modified duty assignments applied the same to all police officers.

It is the policy as applied to Plaintiff and the other police officers that is at issue.

The City Manager is the final authority on discipline, hiring and firing of police officers.

In *Lee v. Kan. City Ry. Co*., 574 F.3d 253, 260, 261 (5th Cir. 2009), the Court explained:

"We do not, however, interpret "nearly identical" as synonymous with "identical."  Applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical.  For example, it is sufficient  that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor. Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable.  As the Supreme Court has instructed, the similitude of employee violations may turn on the "comparable seriousness" of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations. Otherwise, an employer could avoid liability for discriminatory practices simply by coding one employee's violation differently from another's.  *Lee* at 260.

"The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories*." Lee at* 260 (footnotes omitted)."        Also   see   *Garcia   v. Professional Contract. Services, Inc*. No. 18-50144 (5th Cir. 2019).

Pursuant to *Lee* and *Garcia*, Plaintiff and the comparators are similarly situated and Plaintiff has met the fourth element of a prima facie case.

Plaintiff respectfully urges Defendant's motion for summary judgment on this point be denied.

## C.  Defendant's Alleged Bases for Discharge Are Pretextual.

The summary judgment evidence is uncontroverted that no documentation exists supporting Defendant's alleged decision to discharge Plaintiff.  Plaintiff was never informed of any issues with his performance until Defendant told him he could resign and sign a release or be fired in the June 15, 2018 meeting.

This raises material questions of fact on the issue of pretext.

### 1.  Shifting reasons for discharge.

An employer's shifting reasons for a termination decision over time may constitute evidence of pretext.  *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).  Also see *Nasti v. CIBA Specialty Chemicals Corp*., 492 F.3d 589, 594 (5th Cir. 2007).

### 2. No documentation of basis for discharge.

Defendant's City Manager Summer Spurlock made the decision to discharge Plaintiff.

Spurlock testified at deposition that the sole factual basis for her decision was Plaintiff asked about a raise.

This rationale is incredulous on its face.

The uncontested summary judgment evidence shows that Defendant never received any discipline during his eight years as Chief of Police.  Spurlock admits she never advised Plaintiff she took any issue with his request for a raise in pay.  Spurlock testified she had no issues working with Plaintiff. Spurlock deposition, 24:3-14 (PageID 447), 36:7-18 (Page ID 459), 37:16-38:7 (Page ID 460-1)

The purpose of Plaintiff's discussion with Spurlock about a pay increase was to be sure she followed Defendant's policy that required the4 Chief of Police made at least 5 percent more than the Assistant Chief.  Busken deposition, 85:13-91:23, PageID 303-309

Where given reasons for termination are not contemporaneously documented and presented to employee raises question of fact.  See *Laxton v. Gap, Inc*., 333 F.3d 572, 581 (5th Cir. 2003), *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc*., 482 F.3d 408 (5th Cir. 2007).

As set forth above, Defendant's City Manager testified at deposition the sole factual basis for discharge was Plaintiff's request for a pay increase.

Now, Defendant is claiming six additional factual bases for termination.  PageID 143-144.

These additional bases for termination raise material fact issues on pretext.

These additional bases for termination are performance issues.  Where an employer terminates an employee for alleged "poor performance," but no documents to prove the alleged poor performance, a jury may infer discrimination.  *Lloyd v. Georgia Gulf Corp.*, 961 F.3d 1190 (5th Cir. 1992), *Heinsohn v. Carabin & Shaw, P.C*., 832 F.3d 224 (5th Cir. 2016).

In sum, Defendant's alleged factual bases for discharging Plaintiff are not credible.

If the fact finder believes Respondent's reason for removal or discharge is not credible, the fact finder may infer discrimination on that basis alone.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 639 (5th Cir. 2011).

Plaintiff respectfully urges that this Court find material issues of fact exist on the issue of pretext and deny Defendant's motion for summary judgment on this point.

**D.  Plaintiff Has Established a Prima Facie Case of ADA Discrimination.**

The Fifth Circuit Court of Appeals set forth the prima facie elements of an ADA case in *E.E.O.C. v. LHC Group, Inc*., 773 F.3d 688, 697 (5th Cir. 2014).

"To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999).

Defendant argues Plaintiff "was not disabled at the time of his termination." PageID 146. Defendant's argument has no merit.

Defendant specifically told Plaintiff at the June 15, 2018 meeting that he could resign and sign a release or be discharged. The meeting was held after Plaintiff had informed Defendant in May 2018 he would be undergoing major back surgery and would require leave and the same day his FMLA leave was approved on June 15, 2018.

Plaintiff's completed FMLA request was presented to and approved by Defendant prior to the June 15, 2018 meeting.

It is a matter of common knowledge that recovering from a major back surgery will limit major life activities such as walking, bending, and lifting.

Certainly, Defendant's human resources department knew this as it deals with this situation regularly.

The summary judgment evidence raises material facts that Defendant perceived Plaintiff would have at least a temporary disability after surgery.

Armed with this knowledge, Defendant told Plaintiff he could resign and sign a release or be discharged after his FMLA leave expired.

Essentially, Defendant decided it would separate Plaintiff after his leave expired, hopefully with a full release.

When Plaintiff received a full release to return to work from his physician, Defendant refused to return Plaintiff to work and effectuated the decision to discharge it had communicated to Plaintiff in the June 15, 2018 meeting.

**E.  Defendant Ignored Its Own Written Policy.**

Further evidence of Defendant's discriminatory intent is its decision to ignore its own written policy, Sections 20.1 and 20.2, which require "the city to make every possible effort to assign modified duty assignments to these employees on restricted or modified work status."  Appx 000025.

Instead of following its own policy, Defendant falsely told Plaintiff there was no light or modified duty assignment in the police department.

When Defendant learned Plaintiff was to undergo major back surgery and need time off to recover, they decided to discharge him but make the effective date after he was released to return to work by his doctor.  This is the summary judgment evidence.

In *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586 (5th Cir. 2016), the Court observed that 42 U.S.C.A. § 12102(2)(A) includes lifting and handling. 29 C.F.R. § 1630.2(1)  also includes "reaching" as a major life activity.  *Cannon* at 591.

It should be common knowledge and readily apparent to any human resources director that a major back surgery results in substantial impairment will restrict lifting, bending and reaching at least temporarily through the recovery period.

"The ADA now covers not just someone who is disabled but also those subjected to discrimination because they are 'regarded as having . . . an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C.  §12102(1)(c), 3(1)(A)."  *Cannon* at 591.

There is substantial summary judgment evidence to create material issues of fact that Defendant regarded Plaintiff as having an impairment.

First, Defendant decided to discharge Plaintiff shortly after he informed Defendant he was to undergo major back surgery.

Second, Defendant failed to adhere to its accommodation policy.

Third, Defendant falsely stated to Plaintiff there was no modified duty assignment in the police department.

Fourth, Defendant required a release of claim including ADA claim if Plaintiff resigned.

Fifth, as set forth above, Defendant's alleged non-discriminatory reason for discharge, asking for a raise, is not credible and could support a finding of discrimination.

Therefore, Plaintiff urges the Court to deny Defendant's motion for summary judgment on this basis.

## F. Defendant's Alleged Basis for Discharge Is Pretextual.

For the same reasons stated on p. 11, Section C herein, Plaintiff respectfully urges this Court to find Defendant's alleged basis for discharge to be a pretext and deny Defendant's motion for summary judgment on this basis.

## G.  Prima Facie Case of Failure to Accommodate Established.

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability."   42 U.S.C.  §  12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Id. §12112(b)(5)(A).  "Thus, a plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim.:  (1) the plaintiff is a 'qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Justice, Offc. of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)

Defendant alleges that because Plaintiff was told he "would be terminated after his leave ended and would not be returning to work . . . " Defendant is absolved from making any reasonable accommodation.  PageID 151.

This is a novel argument without any legal support.

Under Defendant's theory, after medical leave is approved, an employer may then inform the employee they will be discharged when the medical leave expires and then ignore the ADA's requirement for reasonable accommodation requests.

This theory subverts the very purpose of the ADA.

It is essentially an admission by Defendant that it never intended to offer reasonable accommodation to Plaintiff in direct violation of its own policy.  Rather, once Defendant learned of the major back surgery, it decided it would terminate Plaintiff's employment, albeit immediately after his leave expired.

An employer's failure to follow its own policies without a good reason can be evidence of pretext.  *Goudeau v. National Oilwell Vacco, LP*, 743 F.3d 470, 477 (5th Cir. 2015)

Defendant continued to engage in unconscionable conduct by telling Plaintiff in the January 7, 2019 correspondence that it would consider light duty if Plaintiff's doctor would complete a fitness-for-duty certificate, which was done.  Appx 000027.

This completely contradicts Defendant's summary judgment position any reasonable accommodation was unavailable because Defendant told Plaintiff he would be discharged after his medical leave expired.  PageID 152.

It is apparent Defendant just wanted to wait until Plaintiff was fully released by his doctor before implementing the discharge, in an attempt to avoid ADA requirements.

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. §12112(a).  Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual

"When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in a flexible, interactive discussion to determine the appropriate accommodation." *EEOC v. Agro Distrib.,* 555 F.3d 462, 471 (5th Cir. 2009).

The Plaintiff bears the burden of proving that a position exists that he was qualified for and could, with reasonable accommodation perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

"When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonable accommodate an employee, the employer violates the ADA*." Loulseged v. Akzo Nobel Inc*., 178 F.3d 731, 736 (5th Cir. 1999).

The summary judgment evidence shows Plaintiff met all the requirements of *Jenkins*.  All he needed was accommodation for the 50 pound lifting restriction as Chief of Police.

Despite Plaintiff's requests, physician's notes and certification, Defendant failed to comply with *Loulseged* and engage in a good faith process and reasonably accommodate Plaintiff.

Material issues of fact exist on the claim of reasonable accommodation and Plaintiff respectfully urges the Court to deny Defendant's motion for summary judgment on this basis.

**H. Plaintiff's FMLA Retaliation and Entitlement Claim Are Supported by the Summary Judgment Evidence and Defendant's Motion for Summary Judgment Should Be Denied.**

**1. Plaintiff has established a prima facie case of FMLA retaliation.**

To prove FMLA retaliation, the employee must demonstrate: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Mauder v. Metro. Transit Auth. Of Harris Cty., Tex.,* 446 F.3d 574, 583 (5th Cir. 2006). The third element requires the employee to show "there is a causal link" between the FMLA-protected activity and the adverse action. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005), See also *Acker v. Gen. Motors, LLC*, 853 F.3d 784, 790 (5th Cir. 2017).

By letter dated June 15, 2018, Defendant acknowledged Plaintiff's FMLA approval. The letter explains the process and benefits. The next to last sentence states: "If you are able to return to work before the expiration of the 12 weeks of FMLA leave then **the City must reinstate you in the same or equivalent job with the same pay as your previous position**." Appx 00001. (emphasis added)

The summary judgment evidence shows Defendant approved Plaintiff's FMLA leave on or before June 15, 2018.

Contrary to the Defendant's June 15, 2018 letter to Plaintiff stating he must be reinstated after his FMLA leave, Defendant City Manager, Summer Spurlock, planned to discharge Plaintiff.

The City Manager made notes on two pages, dated June 15, 2018, reflecting what she would tell Plaintiff in the June 15, 2018 meeting. Appx 00002-3.

The notes confirm Spurlock's testimony that she told Plaintiff he could resign while on FMLA leave and sign a separation agreement or be terminated. <u>Spurlock deposition</u>, 79:24-84:25, PageID 502-507.

Spurlock admits Plaintiff had told her he was going to have back surgery and would need to take time off before he applied for FMLA leave. <u>Spurlock deposition</u>, 82:2-6, PageID 505.

The summary judgment evidence shows that as soon as Plaintiff is approved for FMLA leave, Defendant plans to either have Plaintiff resign while on FMLA leave or effectuate his discharge immediately after leave expires.

"Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection required to make out a prima facie case of retaliation.'" *Swanson v. Gen. Servs. Admin*., 110 F.3d 1180, 1188 (5th Cir. 1997).

The Fifth Circuit has noted that a time period of four months is sufficient to demonstrate a causal link for summary judgment purposes. *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Here, the causal link is especially strong because Defendant sought to remove Plaintiff within a day of his FMLA leave approval.

The notes made by City Manager Spurlock show Plaintiff's FMLA leave was front and center on her mind as she was preparing to remove him either voluntarily or involuntarily.

Once again, Defendant has demonstrated its lack of credibility by telling Plaintiff in the June 15, 2018 letter he must be reinstated after his FMLA leave and then telling him he could resign or be discharged during the June 15, 2018.

As set forth above, Defendant never informed Plaintiff of any job deficiencies or that his job was in jeopardy before January 15, 2018.

The Fifth Circuit applies a mixed-motive framework to FMLA claims in which retaliatory animus was a motivating factor in an adverse employment action. *Richardson* at 333.

It is the employer's burden to prove it would have taken the adverse action despite its retaliatory motive. *Richardson* at 336.

"The employer's final burden 'is effectively that if proving an affirmative defense.'" *Id.* at 333. (quoting *Machinchick v. PB Power, Inc*., 398 F.3d 345,355 (5th Cir. 1005).

Plaintiff would show material facts exist on the FMLA retaliation claim and respectfully urges the Court deny Defendant's motion for summary judgment on this point.

**2. Plaintiff's FMLA entitlement claim is meritorious because Defendant decided to discharge Plaintiff after approving his leave.**

Defendant argues that it decided to discharge Plaintiff prior to his taking FMLA leave.

Defendant's argument is not accurate.   As set forth above in (a) Defendant approved Plaintiff's FMLA leave on or before June 15, 2018, according to Defendant's June 15, 2018 correspondence to Plaintiff.

The correspondence states Plaintiff will be reinstated after his FMLA leave expires.   There is no mention of discharge or resignation.

Any decision by Defendant to discharge Plaintiff must have occurred after June 15, 2018 and Defendant's approval of Plaintiff's request for FMLA leave.

City Manager Spurlock told Plaintiff at the June 15, 2018 meeting that he could "resign, Monday, June 18th on FMLA leave . . ."  <u>Spurlock deposition</u>, 83:1-12, PageID 506.

Plaintiff had been approved for FMLA leave by June 15, 2018 when he received Defendant's correspondence of approval.  City Manager Spurlock's notes of what she would say to Plaintiff in the June 15, 2018 meeting are dated June 15, 2018.

Defendant's argument is without merit.  There is no summary judgment evidence Plaintiff tried to immunize himself from discharge.  It is incredulous to argue Plaintiff or anyone would have major back surgery to avoid discharge.

Plaintiff had no knowledge he was going to be discharged until the June 15, 2018 meeting. Defendant presents no credible evidence that Plaintiff would have been discharged had he not taken leave.

In *Mauder*, the Court explained how the" temporal proximity" applies to FMLA protection:

> When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the "temporal proximity" between the FMLA leave, and the termination. *Wilson v. Lemington Home for the Aged,* 159 F.Supp.2d 186, 195-96 (W.D.Pa.2001) (explaining that a causal connection existed between the FMLA leave and the termination when the plaintiff was terminated while on FMLA leave and reasoning that the close proximity in time between FMLA leave and the adverse action establishes the necessary causal connection). Moreover, the plaintiff does not have to show that the protected activity is the only cause of her termination. *Long v. Eastfield Coll.,* 88 F.3d 300 n. 4 (5th Cir.1996) (holding that the plaintiff was not required to show that the protected activity was the "sole factor" motivating adverse employment action). The plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated. *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 684 (5th Cir.2001).  *Mauder* at 583.

Material issues of fact events on Plaintiff's FMLA entitlement claim and Plaintiff respectfully urges Defendant's motion for summary judgment be denied on this point.

Plaintiff incorporates its response herein contained in p. 11, Section C on the issue of pretext.

## V. CONCLUSION

The competent summary judgment evidence establishes a prima facie case of each of Plaintiff's claims pursuant to the ADEA, ADA, and FMLA.

The summary judgment evidence demonstrates the lack of credibility and the contradictory nature of Defendant's arguments.

Defendant's decision to discharge Plaintiff the day his FMLA is approved is startling in its brazenness.

This is especially so for a 35 year police officer with no discipline or reprimands while serving Defendant and its citizens for over eight years.

Defendant ignored its own written policies without explanation.   Defendant made misrepresentations to Plaintiff about his status.

If ever a case needs to proceed to trial, this is one.

Plaintiff respectfully urges the Court to deny Defendant's motion for summary judgment and for such other relief Plaintiff may show himself entitled.

## VI.

**WHEREFORE, PREMISES CONSIDERED**, the above the Plaintiff respectfully requests the Court deny Defendant's motion for summary judgment, and for such other and further relief, at law or in equity, to which he may justly be entitled.

Respectfully submitted,

**RONALD R. HUFF**
Attorney and Counselor at Law
112 South Crockett Street
Sherman, Texas 75090
(903) 893-1616 (telephone)
(903) 813-3265 (facsimile)
ronhuff@gcecisp.com

/s/   Ronald R. Huff_____
Ronald R. Huff (SBN 10185050)

Richardson Law Firm
118 S. Crockett
Sherman, Texas 75090

Tel: (903) 893-7541
Fax: (903) 893-9585

Robert E. Richardson Jr.
SBN: 16873000
robert@richardsonfirm.net

Robert E. L. (Ed) Richardson
SBN: 24007913
ed@richardsonfirm.net

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 23, 2021, a true and correct copy of the foregoing was forwarded electronically via the CM/ECF system in accordance with the FEDERAL RULES OF CIVIL PROCEDURE to:

Darrell G-M. Noga
Christopher A. Klement
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225

/s/   Ronald R. Huff_____

Ronald R. Huff