UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL BUSKEN, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-02808-X |
| | § | |
| CITY OF GREENVILLE, TEXAS, | § | |
| | § | |
|    *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the City of Greenville, Texas's (Greenville) motion for summary judgment [Doc. No. 21] and Daniel Busken's motion to exclude certain evidence [Doc. No. 24]. The Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment and **DISMISSES AS MOOT** the motion to exclude.

### I.     Factual Background

Busken, the plaintiff, served as the Chief of Police in Greenville for eight years until February 2019. After a 2016 back procedure, Busken's back pain worsened to the point that his doctor told him in May 2018 that he would need additional back surgery and seven weeks off from work to recover. On June 14, 2018, Busken requested leave under the Family and Medical Leave Act (FMLA) after informing Greenville's City Manager and Human Resources Director of his upcoming surgery.

Greenville approved Busken's leave on June 15, 2018. That same day, the City Manager and HR Director called Busken into a meeting. There, they told Busken that Greenville was placing him on administrative leave with pay until his FMLA

leave began, and after his FMLA leave expired, he could either sign a severance agreement or be fired. They didn't tell Busken why Greenville was taking these actions.

Busken's leave began on the day of his surgery in July 2018. During his recovery, Busken requested work modifications in line with restrictions prescribed by his doctor. Each time, Greenville denied Busken the work modification and instead extended his medical leave.

Busken received clearance from his doctor to return to work with no restrictions on January 31, 2019. After Busken's clearance, he asked to return to work in early February 2019. Instead, the City Manager and HR Director called Busken to a meeting where the City Manager told Busken again that he could resign via a severance agreement or be terminated. Busken did not sign the agreement, so Greenville terminated him.

At the time of his termination, Busken was fifty-seven years old. Busken did not have any disciplinary actions on file, and he wasn't told that his employment was in jeopardy before the June 2018 meeting. According to Busken, he never received any reason for his termination.

Busken sued Greenville for wrongful termination, bringing claims under the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), the FMLA, and 42 U.S.C. § 1983 (Section 1983). Greenville moved for summary judgment, arguing that the City Manager removed Busken due to poor leadership and declining morale within the Greenville police department. Busken

responded and moved to strike certain exhibits filed with Greenville's summary judgment motion.

## II.     Legal Standard

Courts must grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A material fact is one "that might affect the outcome of the suit under the governing law."[2] And a "dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

The party moving for summary judgment bears the initial burden of identifying the evidence "which it believes demonstrate[s] the absence of a genuine [dispute] of material fact," but need not necessarily support its motion "with materials *negating* the opponent's claim."[4] The nonmoving party must "go beyond the pleadings and establish 'specific facts showing that there is a genuine [dispute] for trial.'"[5] Of course, employment discrimination claims have their own particular summary judgment frameworks, which the Court addresses claim-by-claim below.

---

[1] FED. R. CIV. P. 56(a).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c)(1).

[5] *McWhirter v. AAA Life Ins. Co.*, 622 F. App'x 364, 365 (5th Cir. 2015) (alteration in original) (quoting *Celotex*, 477 U.S. at 324).

### III. Analysis

#### A. Age Discrimination Claim

Busken argues that Greenville violated the ADEA by firing him due to his age. Courts evaluate age discrimination claims using the *McDonnell Douglas* burden-shifting framework.[6] First, "a plaintiff must . . . establish a prima facie case of age discrimination by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."[7] A plaintiff may demonstrate that he was "otherwise discharged because of his age" by showing that "a comparable employee benefited from disparate treatment under nearly identical circumstances—that is, the two employees held the same job or responsibilities, shared the same supervisor . . . and have essentially comparable violation histories."[8]

Second, "[i]f the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination."[9]

---

[6] *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1504–05 (5th Cir. 1988) (applying the *McDonnell Douglas* framework to an ADEA claim). Courts apply the burden-shifting framework "[b]ecause 'there will seldom be eyewitness testimony as to the employer's mental processes'" and most age-discrimination claims rely on circumstantial evidence. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 141 (2000)).

[7] *Goudeau*, 793 F.3d at 474; *see also Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (outlining the same *prima facie* burden under *McDonnell Douglas*).

[8] *Kim v. Hospira, Inc.*, 709 F. App'x 287, 289 (5th Cir. 2018) (cleaned up).

[9] *Goudeau*, 793 F.3d at 474.

Third, if the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee, who "must prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination."[10] "An employee can show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."[11] "In the end, under the ADEA, the employee has the burden of persuasion to establish 'that age was [a] but-for'" cause of the employer's adverse decision."[12]

In its motion for summary judgment, Greenville argues that Busken fails to establish a *prima facie* case because he was replaced by someone older than him. Greenville also argues that, even assuming that Busken carried his *prima facie* burden, he still loses because Greenville had legitimate, nondiscriminatory reasons for terminating Busken—specifically, "undisputed concerns with his leadership."[13]

In response and as to his *prima facie* burden, Busken contends that he was "otherwise discharged because of his age" by receiving disparate treatment on modified duty assignments.[14] While Greenville denied Busken's request for a modified duty assignment during his recovery period, he alleges that two patrol

---

[10] *Id.* (cleaned up).

[11] *Squyres v. Hico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015).

[12] *Id.* (cleaned up) (quoting *Burrage v. United States*, 571 U.S. 204, 213 (2014)).

[13] Doc. No. 22 at 10. Greenville appears to concede that Busken satisfies the first three elements of his *prima facie* burden (that Busken was discharged, that he was qualified for the job, and that he was within the protected class at the time of the discharge).

[14] Busken does not contest that he was replaced by someone older than him, nor does he argue that he was replaced by someone outside the protected class.

5

officers received modified duty assignments, and that those patrol officers are similarly situated to him because "they were police officers."[15] As to Greenville's purported reasons for discharging him, Busken argues that those are pretext because they lack contemporaneous documentation.[16]

The Court holds that Busken fails to carry his *prima facie* burden on his age discrimination claim. Specifically, Busken has not shown that he was treated differently than similarly situated employees. To be similarly situated or "comparable," "two employees [must have] held the same job or responsibilities."[17] Busken admits that the Chief of Police's responsibilities are mostly administrative, that the Chief does not go out on patrol, and that his day-to-day duties differ from patrol officers.[18] The Court finds that a patrol officer is not a comparable or similarly situated employee to the Chief of Police for purposes of an ADEA claim.[19]

Because Busken fails to establish a genuine dispute of material fact as to his ADEA claim, and because Greenville is entitled to judgment as a matter of law, the Court grants summary judgment in favor of Greenville on this claim.

### B. Section 1983 Claim

Busken's complaint argues that Greenville violated 42 U.S.C. § 1983 by depriving him of his property interest in his job as Chief of Police. Greenville

---

[15] Doc. No. 26 at 15.

[16] Doc. No. 26 at 16–17.

[17] *Kim*, 709 F. App'x at 289 (cleaned up).

[18] Doc. No. 23 at 256–57.

[19] Because Busken fails to make a *prima facie* showing of age discrimination, the Court need not decide whether he can rebut Greenville's legitimate, nondiscriminatory reasons for terminating him.

6

responds in its summary judgment motion that Busken had no such property interest in his position. The Fifth Circuit previously ruled that under Texas law, police officers do not have a constitutionally protected property right in continued employment.[20] Therefore, the Court must grant summary judgment for Greenville on this claim.

### C. Disability Claims

Busken filed two claims under the ADA: one for failure to accommodate his disability and one for wrongful termination because of his disability. Greenville moved for summary judgment on both claims.

#### 1.   Failure-to-Accommodate Claim

Busken's first ADA claim is for failure-to-accommodate. While Busken was recovering from his back surgery, he asked Greenville to grant him a modified duty assignment in the form of allowing him to return to his regular work as Chief of Police, except that he could not bend or twist his body, and could not lift anything over 100 pounds.[21] Greenville responded and asked Busken to have an independent doctor send a fitness-for-duty form. The doctor sent the form.[22] Greenville denied Busken's request.[23]

Prohibited discrimination under the ADA includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified

---

[20] *Sims v. City of Madisonville*, 894 F.3d 632, 641–42 (5th Cir. 2018); *Stem v. Gomez*, 813 F.3d 205, 213 (5th Cir. 2016).

[21] Doc. No. 23 at 255–56.

[22] *Id.*

[23] *Id.* at 257.

individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity."[24]

To prevail on his failure-to-accommodate claim, Busken must prove: (1) that he is a qualified individual with a disability; (2) that the disability and its consequential limitations were known by the covered employer; and (3) that the employer failed to make reasonable accommodations for the known limitations.[25] Once an employee requests a reasonable accommodation, "ADA compliance requires an employer to engage in an interactive process with an employee . . . to ascertain what changes could allow her to continue working.[26] "[T]he interactive process is a two-way street; it requires that employer and employee work together, in good faith, to ascertain a reasonable accommodation."[27] But employers are not required to exempt an employee from the essential functions of her job.[28]

In its motion for summary judgment, Greenville focuses on element three of Busken's burden and argues that it did not need to grant Busken an accommodation because it had already told him that he would be fired after his medical leave, and that, regardless, it granted Busken a reasonable accommodation by extending his

---

[24] 42 U.S.C. § 12112(b)(5)(A). Neither party disputes that Busken was disabled under the ADA while he recovered from his back surgery.

[25] *Feist v. La. Dep't of Just., Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

[26] *Dillard v. City of Austin*, 837 F.3d 557, 562 (5th Cir. 2016).

[27] *Id.* at 563.

[28] *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021).

8

paid medical leave.[29] Busken responds by arguing that Greenville is not exempted from the ADA's accommodation requirements just because it planned to fire him, and that the lift restriction he requested was a reasonable accommodation under the ADA.[30]

The Court easily rejects Greenville's argument that it owed Busken no accommodation. "Because it continued to employ him, [Greenville] was obligated under the ADA to reasonably accommodate [Busken] once he was capable of returning to work. This follows from the principle that an employer's obligation to accommodate is triggered when an employee requests an accommodation."[31] It thus makes no difference that Greenville intended to fire Busken after his leave ended, even if such termination would have been justified.[32]

As for whether Busken's request for a modified duty assignment was a reasonable accommodation, the Court finds genuine disputes of material fact. For example, Busken testified that he had been granted modified duty assignments as Chief of Police in the past, and it is unclear whether Greenville engaged in the requisite good-faith, interactive dialogue to determine if Busken could return to work with reasonable accommodation—and instead simply extended his paid leave.[33] Greenville failed to provide the Court with any caselaw indicating that paid leave is

---

[29] Doc. No. 22 at 29–30.

[30] Doc. No. 26 at 21–22.

[31] *Dillard*, 837 F.3d at 562.

[32] *See id.*

[33] Doc. No. 23 at 223; Doc. No. 22 at 30.

a reasonable accommodation when an employee sought, as Busken did, an accommodation to return to work and when the employee argues, as Busken does, that he could have performed the essential functions of his job. After all, a "reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question."[34] Moreover, an accommodation that allows the employee to actually do his job is the type of accommodation that the ADA appears to contemplate.[35] Because of these fact disputes, the Court denies Greenville's motion for summary judgment on Busken's ADA failure-to-accommodate claim.[36]

## 2. Termination Claim

Busken's other ADA claim alleges Greenville discriminated against him because of his disability by telling him that he could either resign or be fired, and by ultimately firing him.[37] Busken relies on indirect evidence, so the *McDonnell Douglas* framework applies.[38] His *prima facie* burden is to show: (1) that he has a disability, has a record of having a disability, or is regarded as having a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment

---

[34] *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759–60 (5th Cir. 1996) (cleaned up).

[35] *See* 42 U.S.C. §§ 12111(9)(A)–(B) (explaining that a reasonable accommodation may include making facilities "accessible" and "usable" or granting the employee "modified work schedules" or "reassignment to a vacant position").

[36] The Court notes that Greenville did not argue that granting Busken's request would have imposed an "undue hardship" on it. *See* 42 U.S.C. § 12112(b)(5)(A).

[37] 42 U.S.C. § 12112(a).

[38] *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

10

decision on account of his disability.[39] "If the employer can articulate a legitimate non-discriminatory reason for the adverse employment action, the *McDonnell Douglas* burden-shifting framework falls away and the issue becomes discrimination [or not]."[40]

Greenville argues that Busken fails to show (1) that he had a disability or was regarded as having one on the relevant dates for the adverse employment actions, and (2) that he fails to show that he was terminated on account of his disability. Even though he was not yet technically disabled when he was given the option to resign or be fired and was no longer disabled when he received 100% clearance from his doctor to return to work, Busken contends that Greenville "regarded [him] as disabled"[41] because he had already told Greenville that he would be having back surgery. Busken also testified that he had taken FMLA leave before and that, in his view, "the expenses associated with [his past] medical history factored into" the decision to terminate him.[42]

In light of Busken's prior medical history, FMLA leave, and the timeline of events, the Court finds that Busken met his *prima facie* burden. And Greenville offers its legitimate, non-discriminatory reason for firing Busken—because of his poor leadership. So the Court asks whether there was discrimination or not.[43] On this

---

[39] *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017); *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); 42 U.S.C. §§ 12102(1)(A)–(B), (3).

[40] *Chevron Phillips Chem. Co., LP*, 570 F.3d at 615.

[41] *Id*.

[42] Doc. No. 23 at 227.

[43] *Chevron Phillips Chem. Co., LP*, 570 F.3d at 615.

step, the Court may "consider both the evidence presented in the prima facie case and any evidence the plaintiff produces that tends to show that the employer's articulated reason for the adverse employment action was pretextual."[44]

Busken argues that Greenville's reasons are pretextual because they lack contemporaneous documentation and that Greenville never told him of any issues with his leadership, thus depriving him of an opportunity to improve.[45] Greenville does, however, have some contemporaneous documentation of Busken's alleged poor leadership, namely a 2017 survey in which police department employees complained about his leadership and management.[46] But Busken is correct that Greenville provided no documentation of poor leadership *from Greenville's perspective*, that Greenville never disciplined him for or warned him about poor leadership, and that Greenville never presented Busken with the survey comments as a basis for a need to improve.[47]

The *prima facie* evidence of discrimination combined with the fact that Greenville never warned, disciplined, or gave Busken an opportunity to improve his alleged poor leadership leads the Court to conclude that a reasonable jury could find

---

[44] *Id.*

[45] Doc. No. 26 at 17.

[46] Doc. No. 22 at 10.

[47] The Court also notes that Greenville identified Busken's request for a raise as a motivating factor for firing him. Doc. No. 22 at 14. But Greenville never told Busken that that was a problem either, let alone gave him an opportunity to explain or retract his request.

that there was discrimination.[48] Accordingly, the Court denies Greenville's motion for summary judgment on Busken's ADA discrimination claim.

### D. FMLA Claims

Busken brought two FMLA claims against Greenville, alleging that (1) Greenville "retaliated against [him] for seeking and utilizing FMLA leave by discharging [him] without legitimate cause," and (2) Greenville unlawfully refused to give him his job back after he received an unrestricted release to return to work.[49]

#### 1. Retaliation Claim

FMLA retaliation claims are also governed by the *McDonnell Douglas* burden-shifting framework.[50] Because Busken alleges that discrimination was at least *a* motivating factor in firing him,[51] the Court applies the Fifth Circuit's mixed-motive test.[52] To succeed, Busken must first demonstrate a *prima facie* case exists by

---

[48] *See Laxton v. Gap Inc.*, 333 F.3d 572, 580 n.2 (5th Cir. 2003) ("[A] plaintiff need only bring evidence that enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action." (citing *Reeves*, 530 U.S. at 147)); *id.* at 581 (reversing district court's grant of summary judgment to employer in part because the employer did not "discuss" issues with the employee and "never gave her the chance to explain her conduct or improve it" before firing her).

[49] Doc. No. 1 at 9.

[50] *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020).

[51] Doc. No. 23 at 227.

[52] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) ("The mixed-motive framework applies to cases in which the employee . . . argues that discrimination was a motivating factor in her termination."); *see also Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010) (explaining that an employee need not concede that an employer's proffered reason is legitimate to proceed under the mixed-motive framework), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362–63 (2013).

Some Fifth Circuit decisions require the employer's reason to justify "both the adverse action and the timing." *Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 914 (5th Cir. 2010) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999)); *see also Vincent v. Coll. of the Mainland*, 703 F. App'x 233, 240 (5th Cir. 2017). Greenville's reason does not explain the timing, meaning that it loses on summary judgment under these Fifth Circuit decisions. But because the

showing that: "(1) [he] engaged in a protected activity, (2) the employer discharged [him], and (3) there is a causal link between the protected activity and the discharge."[53] If Busken carries his *prima facie* burden, the burden of proof shifts back to Greenville to provide a legitimate, non-discriminatory reason for firing Busken.[54] If Greenville's reason does that, the burden shifts back to Busken, who "must offer sufficient evidence to create a genuine [dispute] of fact either that (a) [Greenville's] proffered reason is a pretext for discrimination, or . . . (b) that [Greenville's] reason, although true, is but one of the reasons for its conduct, another of which was discrimination."[55] Finally, the burden shifts back to Greenville to prove that it would have fired Busken regardless of discriminatory animus.[56]

The Court finds that Busken carried his *prima facie* burden by showing that the City Manager told him that he could resign or be terminated on the same day that Greenville approved his FMLA leave.[57] Greenville responds that Busken was fired due to his poor leadership—a nondiscriminatory reason that does not relate to the FMLA.[58] Next, Busken can either show that Greenville's reason is pretext or that

---

Court finds that Greenville loses on summary judgment under the non-timing Fifth Circuit cases, this wrinkle makes no difference here.

[53] *Richardson*, 434 F.3d at 332.

[54] *Id.* at 333.

[55] *Id.*

[56] *Id.*

[57] *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a prima facie case of retaliation." (cleaned up)); *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006) ("When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the temporal proximity between the FMLA leave, and the termination.") (cleaned up).

[58] Doc. No. 22 at 31.

discrimination was a factor in his termination.[59] To do so, close timing is not enough,[60] but Busken also offers as evidence of pretext that Greenville never disciplined him for bad leadership before terminating him and that its statement that it would terminate him for bad leadership conflicts with the paperwork that it provided him when his FMLA leave was approved.[61] For the same reasons the Court finds that Busken rebutted Greenville's reason on his ADA claims, the Court does the same on Busken's FMLA retaliation claim. And Greenville does not argue that it would have fired Busken anyway, just that the "reasons" for firing him predated his request for FMLA leave.[62] Accordingly, the Court denies Greenville's motion for summary judgment on Busken's FMLA retaliation claim.

## 2. Entitlement Claim

Busken also brought an FMLA entitlement claim. While the Court follows *McDonnell Douglas* when examining an FMLA retaliation claim, it does not do so for an entitlement claim to a substantive right provided by the FMLA. Instead, the Court merely looks to see whether the statutory requirements are satisfied and the employee is due the benefit that was denied to him—regardless of employer intent.[63] The FMLA entitles "any eligible employee . . . to be restored by the employer to the position of employment held by the employee when the leave commenced" upon

---

[59] *Richardson*, 434 F.3d at 333.

[60] *Wilson*, 405 F. App'x at 914.

[61] Doc. No. 26 at 24.

[62] Doc. No. 22 at 31.

[63] *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).

return.[64] Yet this does not create "a strict liability standard, requiring employers, in all circumstances, to reinstate employees after returning from FMLA leave."[65] For example, "denying reinstatement to an employee whose right to restored employment had *already been extinguished*—for legitimate reasons unrelated to his efforts to secure FMLA leave—does not violate the Act."[66] So, an employer can disprove an entitlement claim "by offering evidence that the employee would have lost his position even had he not taken FMLA leave."[67]

Here, Greenville argues that the City Manager "indisputably informed [Busken] of his termination prior to him taking his FMLA leave,"[68] and so Busken was not actually entitled to return to his position as Chief of Police because Greenville planned to fire him anyway.[69] But Busken counters that his FMLA letter approving his leave did not mention discharge or resignation,[70] and that this demonstrates Greenville's "lack of credibility."[71]

The entitlement provisions of the FMLA do not apply "where the wheels of termination were put in motion before the request for leave."[72] Greenville focuses

---

[64] 29 U.S.C. § 2614(a)(1)(A).

[65] *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 683 (5th Cir. 2013).

[66] *Shirley*, 726 F.3d at 682.

[67] *Id.*

[68] Doc. No. 22 at 32.

[69] *Id.*; *see also Amedee*, 953 F.3d at 836 (cleaned up).

[70] Quite the opposite, actually. The letter—given to Busken on June 15, which was one day after he requested FMLA leave and the same day that Greenville told him that he could resign or be fired—informed Busken that "the City must reinstate you in the same or equivalent job with the same pay as your previous position." Doc. No. 26 at 23.

[71] *Id.* at 24.

[72] *Nero*, 167 F.3d at 926 (cleaned up).

16

only on when Busken *took his FMLA leave*, but the Fifth Circuit focuses on the request for the leave—which, here, was June 14. The next day, Greenville approved Busken's FMLA leave and then told him that he could resign or be fired after returning. Moreover, as explained above, there was no prior documentation of Busken's alleged poor leadership (at least from Greenville's perspective). For these reasons, the Court finds a genuine dispute of material fact exists as to when "the wheels of termination were put in motion."[73] Accordingly, the Court denies summary judgment on the FMLA entitlement claim.

## IV.   Motion to Strike

Busken also filed a motion to strike certain summary judgment evidence that Greenville attached to its motion. Because the Court does not rely on any of the objected-to evidence in rendering its summary-judgment decision, the Court dismisses Busken's motion as moot.[74]

---

[73] *Id.* (affirming jury verdict concluding that employer did not decide to terminate employee before employee suffered a heart attack where the evidence showed close timing, lack of documentation of performance issues, and conflicting representations to employee).

[74] The only objected-to evidence that the Court indirectly addresses is the police department survey, which it does not weigh against Busken.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Greenville's motion for summary judgment and **DISMISSES AS MOOT** Busken's motion to strike.

**IT IS SO ORDERED** this 3rd day of November, 2021.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE